UNITED STATES of America, Plaintiff,

v.

Ernesto J. BENEVENTO, et al., Defendants.

No. SSS 86 Cr. 485 (EW).

United States District Court,
S.D. New York.

July 15, 1987.

See also, 649 F.Supp. 1379.

Rudolph W. Guiliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; John K. Carroll, Asst. U.S. Atty., of counsel.

Goldberger & Dubin, New York City, for Ernesto J. Benevento; Lawrence A. Dubin, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant, Ernesto J. Benevento, and others were convicted after a four-week trial of various violations of the narcotics laws, including conspiracy to manufacture, distribute and possess with intent to distribute; travelling in interstate or foreign commerce with intent to distribute the proceeds of narcotics manufacturing and to promote trafficking in narcotics; the Racketeer Influenced and Corrupt Organizations Act ("RICO"); conspiracy to violate that Act; and as organizers, supervisors and managers of a continuing criminal enterprise.

We are here concerned with redacted count 7 of the indictment which charges that Ernesto J. Benevento "did obtain properties constituting and derived from, the proceeds [he] obtained directly and indirectly as a result of [violations of the federal narcotics laws], which properties are subject to forfeiture to the United States, to wit, (9) approximately $300,000. in cash given by Ernesto J. Benevento to another individual on or about November 19, 1984; (10) approximately $438,000. in cash given by Ernesto J. Benevento to another individual on November 30, 1984; ... (12) approximately $500,000. in cash given by Ernesto J. Benevento to another individual on or about May 2, 1985."

During the trial all parties agreed to submit the outstanding forfeiture charges to the Court rather than the jury for resolution. The government and the defendants, subsequent to trial, reached an accommodation as to all forfeiture claims except those referred to above. The government now moves for forfeiture with respect to those specifications, totalling $1,238,000., and that, pursuant to 21 U.S.C. § 853(p), any judgment entered against the defendant may be satisfied from other moneys and properties than those identified in the three items referred to above as set forth in redacted count 7.

The motion is made pursuant to 21 U.S.C. § 853, which in sum provides for the

forfeiture, after conviction, of any interest of a defendant in property derived from proscribed narcotic activities or a continuing criminal enterprise. The statute further provides that there is a rebuttable presumption at trial that any property of a person convicted of a felony under the chapter is subject to forfeiture if the United States establishes by a preponderance of the evidence that (1) such property was acquired by such person during the period of the violation or within a reasonable time after such period, and (2) there was no likely source for such property other than the violation of the chapter.

The trial evidence abundantly established that during 1984 and 1985, Ernesto J. Benevento was not lawfully employed, and substantially all his income was derived from his narcotics trafficking activities. The proof at trial further established that he set up false tax returns to give the semblance of legitimate income. Documentary proof, consisting of detailed computer printouts and testimonial evidence by participants in the crimes charged against Benevento and his codefendants, fully establishes the government's claim for forfeiture of the items requested.

The moneys which are the subject of this motion were unseized at the time of their identification. The government's proof, documentary and testimonial, upon which the jury found all defendants guilty, was overwhelming. It established that Ernesto J. Benevento and his uncle, Ernesto A. Benevento, operated a continuing criminal enterprise which, among other illicit activities, imported 300 kilograms of morphine base to the United States in 1983; thereafter, converted the morphine base into 148 kilograms of heroin; and, later, distributed 146 kilograms of heroin to distributor groups in the New York metropolitan area by May 10, 1985. Records kept by the Benevento group indicated that the cost and the proceeds of the distributed heroin was in excess of $23,000,000. Each and every transaction in furtherance of the defendants' illegal trafficking activities produced profits for the venture, and included the proceeds specified for forfeiture.

Specifically, with respect to the instant motion, the government established as to item 9 of redacted count 7 that Ernesto J. Benevento travelled to New York on November 19, 1984, and after collecting approximately $1,584,000. from heroin customers, advanced $300,000. for payment to Scapula and Altieri, two co-conspirators; further, that he gave $300,000. of illicit narcotics proceeds to Fatima dos Santos Nobre, a co-conspirator not named in the indictment as a defendant, who testified as a prosecution witness under a cooperation agreement. Nobre testified that Ernesto J. Benevento, on that day, packed "a lot of money" in packets of 100's, 50's, and some 20's in a suitcase at the Parker Meridian Hotel, New York City, and accompanied her to Kennedy International Airport, where he waited until her departure with the money. Upon arrival in Zurich, the money was delivered to one of the co-conspirators.

As to the $438,000. specified for forfeiture in item 10 of redacted count 7, the government's documentary proof further established that Benevento advanced that sum for payment to Scapula and Altieri, on January 20, 1985; that Benevento met Nobre in January 1985, at the Doral Hotel in Miami, Florida, where he transferred a quantity of money to Nobre which was placed in a suitcase with her clothes. Again the bundles were in 100's, 50's, and 20's in currency. Benevento remained with Nobre until her flight departed. Upon arrival at Zurich, she transferred the funds to one of the co-conspirators, who directed that a portion be transferred to a bank account in Madrid.

As to the $500,000. in specification 12 of redacted count 7, the government's documentary proof established that on May 1, 1985, Ernesto J. Benevento collected $605,000. from heroin customers and, on the following day, he and other co-defendants contributed $500,000. for a heroin venture. Nobre testified that in May 1985, she received a quantity of money from Benevento at the Parker Meridian Hotel in New York City, in bundles of 100's, 50's, and 20's; that he accompanied her to Kennedy Inter-

national Airport; and that he stayed with her until the plane departed. A special agent testified that after following the couple, he opened Nobre's luggage and observed a quantity of currency in it.

 The evidence offered by the prosecution leaves no room to doubt that the specified items of money constituted the proceeds of narcotics trafficking, and as such are forfeitable to the United States under the provisions of 21 U.S.C. § 853. The Court rejects as without substance the defendant's claim that other co-conspirators had a joint interest in the funds, and so only Ernesto J. Benevento's proportional share is forfeitable.

The imposition of joint and several liability on a forfeiture is consistent with the language of the statute. The provision for criminal forfeiture states that forfeiture may be had of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of the violation."[1] The criminal forfeiture provision, which should be construed liberally,[2] clearly may be read to include the money sought by the government in this forfeiture order. The phrase "any property constituting ... any proceeds obtained, directly or indirectly, as the result of such violation,"[3] under its clear meaning is not limited to property acquired solely or wholly by the defendant but encompasses property derived by the defendant indirectly from those who acted in concert with him in furthering the criminal enterprise and produced the property derived from the violation. Once it is established that the defendant received the proceeds sought to be forfeited it matters not whether his actions produced the entire property or a portion thereof. The entire proceeds of the illicit property found in his possession and derived from the criminal enterprise is subject to forfeiture. Any person claiming a legitimate interest in the illicit proceeds is free to assert his claim. But the sweep of the statute is broad enough to impose joint and several liability upon those who engaged in and furthered the criminal enterprise that produced the funds subject to forfeiture.

The defendant's interpretation of the criminal forfeiture provision would render it a nullity, and give criminals an incentive to engage in complex financial transactions in order to hide their share of the proceeds. Such an incentive would be wholly contrary to the intent of Congress in enacting the criminal forfeiture provision. Section 583, a 1984 addition to the Comprehensive Drug Abuse Prevention & Control Act of 1970, was enacted "to address the phenomenon of defendants defeating forfeiture by removing, transferring, or concealing assets prior to conviction."[4] If the defendant were to escape liability under the criminal forfeiture provision because he had compatriots in crime who also profited from the criminal behavior, the defendant effectively would be able to conceal or transfer assets prior to conviction and, thus, defeat the purposes of the provision. The very nature of a criminal conviction for participation in a continuing criminal enterprise suggests that other persons will have been involved and derived profit from the criminal activity; yet, it is unlikely that the criminal organization will have well-maintained and accurate files of proportional participation in the group. Such a construction of the statute would lead to consequences incon-

---

1. 21 U.S.C. § 853(a)(1).

2. *Cf. Russello v. United States,* 464 U.S. 16, 27, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983) (referring to the criminal forfeiture provision of RICO). The criminal forfeiture provision of the Comprehensive Drug Abuse Prevention Act was enacted at the same time as that of RICO, in the Comprehensive Crime Control Act of 1984, P.L. 98–473. The forfeiture provision of the Comprehensive Drug Abuse Prevention Act parallels that of amended RICO. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 210, *reprinted in* 1984 U.S.Code & Ad.News 3182, 3374, 3393.

3. 21 U.S.C. § 853(a).

4. S.Rep. No. 225, 98th Cong., 1st Sess. 191, 195, *reprinted in* 1984 U.S.Code & Ad.News 3374, 3378 (referring to the provision added to RICO but applicable to this statute as well, see *id.* at 210, *reprinted in* 1984 U.S.Code & Ad.News 3374, 3393).

sistent with and would defeat the legislative purpose of the statute.[5]

 The view that joint and several liability cannot be imposed on a forfeiture must be rejected.[6] In this instance, based upon the evidence, individual liability is imposed upon the defendant Ernesto J. Benevento. The funds specified in redacted count 7 are forfeited to the government. Since the moneys were not seized at the time of their use as derived from narcotics trafficking, the government is entitled to an *in personam* judgment against Ernesto J. Benevento, which may be satisfied from other properties owned by him and held for his benefit, and the judgment may be entered accordingly.

So ordered.

---

**5.** *See United States v. McKeithen,* 822 F.2d 310, 315 (2d Cir.1987) (one of the tenets of statutory construction is that all laws are to be given a sensible construction).

**6.** *Cf. United States v. Caporale,* 806 F.2d 1487, 1504, 1506–09 (11th Cir.1986) (joint and several liability on a forfeiture imposed under RICO is in keeping with the language and purposes of that statute).