UNITED STATES of America,

v.

James Sutton REGAN, Charles M. Zarzecki, Jack Z. Rabinowitz, Paul Berkman, Steven Barry Smotrich, Bruce Lee Newberg, Defendants.

No. 88 Cr. 517 (RLC).

United States District Court,
S.D. New York.

Oct. 20, 1988.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for U.S.; Mark C. Hansen, Neil Cartusciello, Peter G.A. Safirstein, Asst. U.S. Attys., of counsel.

Lowenstein Sandler Kohl Fisher & Boylan, Roseland, N.J., for defendant Regan; Theodore V. Wells, of counsel.

Grand & Ostrow, New York City, for defendant Zarzecki; Paul Grand, Diana Parker, of counsel.

Robert Hill Schwartz, P.C., New York City, for defendant Rabinowitz; Robert Hill Schwartz, of counsel.

Robsinson Wayne & LaSala, Newark, N.J., for defendant Berkman; John D. Arseneault, of counsel.

Hayden, Perle and Silber, New York City, for defendant Smotrich; Alan Silber, of counsel.

Gerald B. Lefcourt, P.C. (Gerald B. Lefcourt, of counsel), Goldman & Hafetz, New York City (Frederick P. Hafetz, of counsel), for defendant Newberg.

ROBERT L. CARTER, District Judge.

All but two of the outstanding issues have already been disposed of in open court, and those two issues will be determined in this memorandum, which for the convenience of the parties will also summarize all the prior dispositions. Thus, the parties may look to this memorandum for a procedural profile of the case up to the present, rather than being required to canvass each of the transcripts to determine the status of the various issues raised.

These defendants have been charged under a 35 count indictment with conspiracy to commit securities, mail and wire fraud, with conspiracy to file fraudulent tax returns, with conspiracy to participate in a racketeering enterprise and actual participation therein, and with conspiracy to conduct the affairs of the enterprise through a pattern of racketeering activity in violation of Title 18, United States Code, §§ 1962(c) and 1962(a) and actual participation therein. Pursuant to the RICO violations, the government seeks forfeiture of all the defendants' interest in the enterprise (which are Princeton/Newport partnerships) and the proceeds of the illegal activity.

An order was entered putting the partnerships' operations under effective governmental restraint and control, and restraints were placed on all defendants' reachable assets to secure the government's forfeitable interests in event of conviction, leaving defendants access to sufficient funds for living expenses and payment of their lawyers fees.

The partnerships appealed. The individual defendants did not. The Court of Appeals upheld the government's right to the restraints imposed but ruled that the government was required to seek, if possible, less burdensome restraints on the defendants' partnerships' interests by permitting the posting of a bond sufficient to cover and secure the equivalent of defendants' potentially forfeitable property that the government would be entitled to receive on conviction. See *United States v. Regan*, 858 F.2d 115 (1988).

█ On remand after a hearing, the government was instructed to quantify the forfeitable property of defendants it regarded itself entitled to on conviction and to accept a bond in that amount. The court determined that the forfeitable property

the government is entitled to secure is the interest of the defendants in the partnerships during the period of the alleged crimes (July 1, 1984 to February 12, 1986). The government seeks accretions in the defendants' partnership interests subsequent to February 12, 1986, but the court construes the penalty imposed by the RICO statute on a defendant's untainted property as being in the nature of a fine that is fixed and final as of the time of the crime. The parties were instructed to compute the amount involved, and when the defendants post a bond in that amount, an order is to be submitted to the court for signature dissolving the current governmental encumbrances of the activities of the partnerships. The defendants have agreed, as I understand it, that no activity will occur in certain of the partnerships except on notice to the government. That agreement is not affected by the instant disposition.

■ Defendants argue that they are entitled to a hearing at which time the government would be required to establish its entitlement to continue to impose restraints on defendants' property. Defendants contend that due process considerations require the government to sustain the burden of proof justifying continuation of these restraints. As I read 18 U.S.C. § 1963(d)(1), the government is entitled on indictment to apply to the court for a satisfactory performance bond or other restraints to secure the potentially forfeitable property of the indicted defendants. All the government is required to do at that stage is to articulate a cogent thesis or theory of its entitlement, thereby affording defendants sufficient notice of the government's claim to enable them to prepare a defense.

The Court of Appeals decision is in accord with this analysis. While it is true, the individual defendants before me were not parties to the appeal, implicit in the Court's holding was a rejection of defendants' present contention that the government must establish the right to forfeiture at a pretrial hearing. The Court indicated that before the government's right to the burdensome restraints imposed could be approved, a less onerous alternative should be sought. There was no intimation of the necessity for the government to give defendants a preview of its evidence at trial to justify a continued restraint on defendant's property to insure the availability of defendants' forfeitable assets on conviction.

■ Defendants may request a pre-trial hearing on the government's claims, but it is the defendants' burden at such hearing to establish the insufficiency of the indictment and of the government's theory as a matter of law and/or fact.

At an October 19, 1988 hearing defendants Newberg, Smotrich and Zarzecki, for all the partner-defendants, disputed the government's right to secure forfeiture of the salaries of all the defendants, to hold Newberg liable for the illegal profits made by Drexel Burnham pursuant to Newberg's fraudulent securities manipulations and contested as a matter of law the sufficiency of wire and mail fraud counts as predicate acts for the RICO violations.

■ The government's right to secure as potentially forfeitable the salaries of the partner-defendants gives me no pause. I categorize that as part of their interest in the partnerships and, find them, therefore, forfeitable.

The salary of Steven Smotrich, a Princeton/Newport employee with no other property in the partnerships, and the salary of Bruce Newberg, a Drexel Burnham employee with no interest in the partnerships, are in a different category. The government theory for forfeiture is that but for their participation in the illegal schemes, their salaries would not have been paid.

Smotrich and Newberg established at the October 19, 1988 hearing that their salaries were on a par with those of other similarly situated employees in the industry. They contend that this evidence, which the government does not contest, constitutes a prima facie showing that the government's rationale for holding their salaries forfeitable is without merit. Accordingly, they argue, the government must now come forward with evidence to overcome their prima facie case. Defendants, however, have met their burden only in part. In addition

to showing that the salaries they received were consonant with industry-wide practice, they must also show that they would have retained their jobs even if they had refused to obey the orders of their superiors to engage in illegal activities during the period in question. The latter is necessary to meet the government's but for thesis. No such showing was made. Accordingly, the government is entitled to continue restraints on Smotrich's and Newberg's assets to hold secure the equivalent of their salaries for the period in question as potentially forfeitable to the government.

The government has placed restraints on Newberg's assets to secure an additional $669,000. Newberg, a Drexel Burnham employee, engaged in illegal manipulation through the partnerships which resulted in some $669,000 in illegal profits for Drexel Burnham. That that organization is not before us is, I think, irrelevant. The government contends that Newberg's assets equivalent to the profits he helped secure for his employer are forfeitable to the government.

■ Section 1963(a) describes as forfeitable (1) "any interest the person has acquired or maintained;" (2) "any interest ... affording a source of influence over any enterprise which the person has established...." For property to be forfeitable under the statute, the government must show that the defendant held a beneficial interest in the property at the time the crimes were committed. The government has not articulated a theory that would enable the court to hold that Newberg had a beneficial interest in the $669,000 in question. While it is true that his manipulations made the profits to his employer possible, and he may be found to be an aider and abetter, at no time did Newberg have actual or constructive possession of these funds, nor hold any other proprietary interest in them.

The government cites *United States v. Benevento*, 663 F.Supp. 1115 (S.D.N.Y. 1987) (Weinfeld, J.), *aff'd* 836 F.2d 129 (2d Cir.1988), and *United States v. Caporale*, 806 F.2d 1487 (11th Cir.1986), in support of its position that these profits are forfeitable. Both of these cases are distinguishable. The defendants in both of these cases at one time actually had possession of the illegal proceeds which were forfeitable to the government. In *Benevento* the defendant was held liable for the gross amount of the illegal proceeds, not merely his proportionate share actually retained. In *Caporale* the defendants received illegal kickbacks through conduit corporations and were held liable to the government for entire amounts realized because the kickbacks, although paid to conduit corporations, were for the use and benefit of defendants.

In the case at bar, defendant Newberg, on the basis of the present record, never obtained any of the proceeds since all of the profits went directly into the firm's account without first passing through Newberg's possession. Accordingly, the nexus essential to the government's entitlement to hold Newberg's assets forfeitable for the $669,000 which Drexel Burnham took is missing. The restraints on Newberg's assets to secure the $669,000 in question, therefore, is vacated.

Defendant Zarzecki contends that neither the scheme to depress C.O.M.B. stock nor to hide Drexel's interest in equity securities of Mattel, Inc. deprived C.O.M.B. or Mattel, Inc. of any property, and that *McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), and *United States v. Evans*, 844 F.2d 36 (2d Cir.1988) require such a deprivation as an essential element of wire or mail fraud violation. While this argument has surface appeal, on reflection it has no substance.

■ First, it is not necessary to allege that the defendants actually succeeded in wrongfully depriving anyone of a property interest. It is only necessary for the government to allege and prove that "the defendants *contemplated* some actual harm or injury to their victims." *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987). *McNally* certainly requires that the purpose of the scheme or manipulation be the injury or harm to a property interest, but it does not require that the objective be achieved.

■ Secondly, it is not necessary to allege that the defendants' scheme was intended to result in a direct transfer of

**40**

money or other property interest from the deceived parties to the defendants. It is only necessary to allege that the victims of the deception would have lost money or some other tangible or intangible property interest if the scheme had been successful. The *Evans* court articulates this position in explaining why wholesale purveyors of counterfeit money can be found guilty of mail fraud even when they do not receive their profits from the victims of their fraudulent activity. *Evans*, 844 F.2d at 39–40.

In this case the government has alleged and proposes to prove not only that Mattel and C.O.M.B. were defrauded of property interests, but that the United States government, the holders of Mattel and C.O.M.B. securities and the investing public were victims of the scheme as well. Even if it were true, as defendants claim, that Mattel and C.O.M.B. could have suffered no detriment to their property interests, the same cannot be said of the government, the holders of their securities and the investing public.

■ The alleged purpose of the Mattel transactions was to defraud the government of tax revenue. The defendants argue that this cannot be characterized as a scheme to defraud the government of property, because the government's property interest in tax revenues does not vest until a tax deficiency is declared. Whether the government had a vested property interest during the life of the scheme is irrelevant. If the alleged scheme had been brought to fruition, it would have fraudulently deprived the government of tax receipts. That was the alleged purpose of the scheme. Surely that putative monetary detriment satisfies the *McNally* requirement.

In addition, investors in C.O.M.B. and possibly Mattel securities could have suffered a monetary detriment as a result of the scheme. They entered transactions which they believed to be the result of free and open market activity, but which on the contrary was subjected to defendants fraudulent manipulations. If such manipulations were successful, then it necessarily follows that some buyers or some sellers of securities suffered a detriment to their property interests. This is sufficient to meet the *McNally* and *Evans* yardsticks.

*Conclusion*

In sum, the court holds that the government has the right to security equivalent (a) to the partnership interests of defendants during the period July 1, 1984 to February 12, 1986, and (b) the salaries of defendants including Smotrich and Newberg for the period July 1, 1984 to February 12, 1986. The government may no longer continue restraints on Newberg's assets to hold secure an estimated $669,000 in addition to his salary which are profits gained by Drexel Burnham through Newberg's illegal activities. The defendants' challenge to the sufficiency of the mail and wire fraud counts contained in the indictment is rejected.

Finally, the court finds the government has articulated a theory of potential forfeiture sufficient to apprise each defendant of the government's claim and to enable the defendants to prepare adequately to defend against the same.

IT IS SO ORDERED.