UNITED STATES of America, Plaintiff,

v.

Earl and Juanita HARRY, Defendants.

In the Matter of Eddie and Elizabeth FARREY, Third–Party Petitioners.

No. CR 90–1007.

United States District Court,
N.D. Iowa, E.D.

May 6, 1993.

Martin J. McLaughlin, Asst. U.S. Atty., Cedar Rapids, IA, for plaintiff.

Anthony F. Renzo, Des Moines, IA, for Eddie and Elizabeth Farrey.

## ORDER

DONALD E. O'BRIEN, Senior District Judge.

This forfeiture matter comes before the Court on the third-party petition of Eddie and Elizabeth Farrey.

## I. BACKGROUND.

On September 19, 1990, the United States filed a two-count indictment against Earl and Juanita Harry. In Count 1 of the indictment, the Federal Grand Jury for the Northern District of Iowa charged Earl and Juanita Harry with conspiracy to distribute illegal narcotics. Count 2 of the indictment requested the forfeiture of property suspected of facilitating illegal narcotics transactions charged in the first count or that said property had been obtained with proceeds of those transactions. Upon a plea of guilty by defendant Earl Harry, the United States District Court ordered the property forfeited on April 12, 1991. Also on April 12, 1991, the co-defendant, Juanita Harry, consented to forfeiture of the property. One of those properties, specifically the property listed in paragraph six of the forfeiture count,[1] is

---

1. The indictment describes the property as: "All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements, legally described as:

claimed by Eddie and Elizabeth Farrey. It is their contention that the property is their home and always has been, and has no connection to the drug transactions of the defendants.

Eddie R. (Bob) Farrey and Elizabeth A. Farrey purchased the property located at 243 East High Street in Shullsburg, Wisconsin, in 1972 for the purchase price of $14,000.00. At that time, the Farreys put $400.00 down, and began making mortgage payments of $90.00 per month through the Farmers Home Administration. Since 1972, the Farreys have used 243 East High Street property as their sole residence and home and have been the sole owners of the 243 East High Street property. The only party to have a lien interest in the property was the mortgagor, the Farmers Home Administration. Bob Farrey testified that neither Mike Woodward, the Farreys' son, nor the Harrys, the defendants here, ever owned or possessed any right, title, or interest in the property.

The Farreys were parents to two boys during the last twenty years. One of the sons, Mike Woodward, was the biological son of Elizabeth Farrey from a previous marriage. Mike was raised in the house at 243 East High Street and was close to his stepfather, Bob Farrey. Mike left home in 1982, before he graduated from high school, and married Lynn Woodward. Mike and Lynn bought a trailer in Shullsburg, where they lived until Mike was injured in a motorcycle accident in March of 1989. Mike never moved back in with his parents and Mrs. Farrey testified that he was seldom around. Undisputed testimony shows that during the time Mike lived at home, there was no indication of illegal drug use; Mike was never charged with any criminal offenses nor was the house ever used for illegal drug transactions.

Bob Farrey claims that he was very frugal with the family finances, never spending money nor taking vacations and that he saved money in cash in a metal box he kept in the basement. He testified that he began saving in the mid–70's for the purpose of paying off his mortgage. He did not tell his wife where he kept the money nor the amount saved, out of fear that she would spend it. Elizabeth Farrey testified that she found cash hidden in the house on two occasions; once she found approximately $1,500.00 and the other time she found approximately $350.00.

In 1988, during a time when Bob and Elizabeth Farrey were separated, Mike Woodward asked his father to open a safety deposit box in the name of Bob Farrey for the purpose of holding Mike's cash. When asked, Mike told his stepfather that the money came from gambling, which Mike was known to do. In addition to Mike's money, Bob Farrey put some of his own personal papers in the box for safekeeping. Bob Farrey opened the safety deposit box (# 449) at the Farmers and Merchant's Bank, the same bank where Mr. Farrey kept his personal checking account. The Farreys had a joint checking account at the Benton Bank in Shullsburg, which was used primarily by Mrs. Farrey. Mrs. Farrey was not aware of this safety deposit box at that time.

In the fall of 1988, Mr. Farrey agreed to purchase a garage for Mike Woodward in his name. Though Bob Farrey's name is on the title to the garage, he testified that he owned the garage in name only. Mike Woodward gave him $6,000.00 for this transaction. The money likely came from the safety deposit box. Mr. Farrey testified that he still had no knowledge of Mike Woodward's drug activities. Mrs. Farrey had no knowledge of this transaction.

In February of 1989, Mr. Farrey paid off the remaining balance of the mortgage on the Farreys' home at 243 East High Street. The balance was $10,399.52. Just prior to this payoff, Mr. Farrey deposited $9,600.00 into his checking account. Mr. Farrey ad-

Lots One and Four in Block Two of Robert's Addition to the City of Shullsburg, according to the recorded plat thereof, Lafayette, County, Wisconsin and located at 243 East High Street, Shullsburg, Lafayette County, Wisconsin, said property is ti-

tled to Eddie R. Farrey and Elizabeth A. Farrey as shown by a deed recorded in the Title Vol. 172, Page 182, Document No. 202837 of the Land Records for Lafayette County, Wisconsin."

mitted that on the same day as the deposit he made an entry into the safety deposit box. At the time of the payoff, the Farreys were current on their mortgage payments. Frank Goff, an FHA administrator, agreed on cross-examination that at the time the mortgage was paid off the Farreys were current on their mortgage and further testified that he would have encouraged them to pay off the mortgage early. Mrs. Farrey had no knowledge that Mr. Farrey paid off the mortgage until later.

FBI Agent David Weisman testified that the records of the bank confirm that Bob Farrey made a visit to the safety deposit box the same day he deposited $9,600.00 into his checking account. Agent Weisman also testified, however, that after Bob Farrey paid off the mortgage he still had approximately $4,000.00 left in his checking account. Because of this, Agent Weisman figured that Mr. Farrey could have gotten by with a deposit of only $6,000.00 or $7,000.00 and still paid off the $10,399.52 remaining on the mortgage.

In March of 1989, after learning how much interest increases costs, Mr. Farrey asked Mrs. Farrey if she wanted to pay off the lien on her automobile (1988 Pontiac LeMans). Mrs. Farrey agreed and the balance of $8,134.59 was paid. The balance was paid by a loan from Mike Woodward, who authorized Mr. Farrey to use money from the safe deposit box.

Later in March of 1989, Mike Woodward was involved in a serious motorcycle accident that left him in a coma. He never recovered. Mike Woodward died in November of 1990.

In July of 1989, Mr. and Mrs. Farrey offered to help Lynn Woodward, Mike's wife, purchase a house at 252 E. High Street. They used money from Mike's safety deposit box to make a down payment of $5,000.00. The Farreys borrowed $13,000.00 from Benton Bank to pay the balance. Later, after Lynn Woodward received insurance money from the accident, she paid the Farreys $20,-000.00. The Farreys paid off the $13,000.00 loan from Benton Bank, and conveyed title to

Lynn Woodward. The remaining $7,000.00 was kept in trust for Lynn Woodward and was disbursed in the following months. The Farreys did these things to provide their pregnant daughter-in-law and her child with a place to live at a time when Mike Woodward was in a coma. The use of money from Mike Woodward's safety deposit box to make the down payment was the first time Mrs. Farrey learned of the existence of the safety deposit box.

In June of 1990, when FBI agents first interviewed Mr. Farrey, he gave inconsistent and inaccurate statements concerning the source of money used to pay off the lien on Mrs. Farrey's car and to make the down payment on Lynn Woodward's house. Mr. Farrey testified that he did it to protect his stepson. Later, Mr. Farrey told FBI agents the correct chain of events, importantly noting that he did not know of his son's involvement in drug trafficking and that he paid off the mortgage on his own home with his own savings.

The Farrey's did not challenge the forfeiture of Mike's garage or Lynn's house [2] because neither was their property. The Farreys did not challenge the forfeiture of Mrs. Farrey's car on the advice of counsel. Neither Eddie Farrey nor Elizabeth Farrey have ever been charged or convicted of any criminal conduct, and FBI Agent Weisman testified that in his opinion, neither of the Farreys were involved in any illegal drug transactions.

Both petitioners work full time. Mr. Farrey has worked for the City of Shullsburg for the past twenty years, and Mrs. Farrey has held several jobs. It appears from Government Exhibit 21 that, at least at the time the Farreys borrowed money from the Benton Bank to buy Lynn Woodward's house in July of 1989, the Farreys enjoyed a yearly income of approximately $30,000.

The real factual dispute in this case is whether the Farreys had reason to believe their adult stepson, Mike Woodward, was involved in illegal drug trafficking, and

2. By virtue of an agreement with the government, Lynn Woodward's house ultimately was   not forfeited.

whether the money used to pay off the mortgage on the Farreys' home was proceeds of that drug trafficking or savings of Mr. Farrey. Bob Farrey testified that he never took money from the safety deposit box for his own personal use.

The government as heretofore set out has produced evidence that Mike Woodward was a friend and probable co-conspirator of Earl and Juanita Harry, the co-defendants in the criminal case giving rise to this forfeiture action; that Mike Woodward kept a safe deposit box (# 449) at the Farmers and Merchant's Bank under the name of Bob Farrey, his stepfather; and that the safe deposit box contained several thousand dollars in cash likely derived from sales of illegal drugs. The government also has produced evidence that Mr. Farrey used money from the safe deposit box to buy a garage for Mike Woodward, to pay off the lien on Mrs. Farrey's car, and to make a down payment on Lynn Woodward's home.

## II. DISCUSSION.

■ The matter before the Court is a criminal forfeiture case brought by the United States pursuant to 21 U.S.C. § 853. The case involves a multitude of difficult and complex issues. Nevertheless, the Court has found itself grappling with one fundamental question: How far afield may the United States chase money potentially derived from illegal drug activity? As it relates to this particular case, the question, if the government's position were adopted, becomes: May the United States forfeit a couple's lifelong home on the ground that the mortgage balance was paid with money obtained from their son, when the money, unknown to the home owners, turns out be drug proceeds of an unindicted, unconvicted co-conspirator? [3]

The criminal forfeiture statute entitles the United States to forfeiture of any property of "convicted" persons "constituting or derived from, any proceeds the person[s] obtained directly or indirectly, as the result of such violation [of drug laws]." 21 U.S.C. § 853(a)(1). The government establishes a rebuttable presumption that the property is subject to forfeiture by proving by a preponderance of the evidence that the property was acquired by the convicted person(s) during the period of the violation of the drug laws or a reasonable time thereafter *and* that there was no likely source of payment for such property other than proceeds from the violation. 21 U.S.C. § 853(d)(1) & (2) (emphasis added). A third party may avoid forfeiture by proving by a preponderance of the evidence a superior interest in the property than the defendant *or* by showing a bona fide purchase for value. 21 U.S.C. § 853(n)(6)(A) & (B) (emphasis added).

In this case, the convicted persons under the statute are Earl and Juanita Harry. Earl Harry pleaded guilty and Juanita Harry was convicted by a jury. Clearly, any money they made from drug dealing, any property they purchased with money made from drug dealing, and any property purchased on their behalf by someone to whom they had given drug money for purposes of such a purchase, all would be subject to forfeiture under the statute. *See United States v. Benevento,* 663 F.Supp. 1115, 1118 (S.D.N.Y.), *aff'd,* 836 F.2d 129 (2d Cir.1987). The Harrys consented to forfeiture of several items of property, including the house now involved here located at 243 E. High Street, without putting the government to its proof.

The problem in the case before the Court is that the convicted persons, the Harrys, were neither the purchasers nor true owners of the residence at 243 E. High Street. *Cf. United States v. Herrero,* 893 F.2d 1512, 1542 (7th Cir.), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990) (though lawyer was purchaser of real estate, he was mere nominal owner for drug kingpin who lived in property with family). The Farreys are the purchasers and true owners. They purchased the property in 1972, long before the time of the Harrys' drug conspiracy, and have been living there ever since. At best the government can show that the Farreys paid off their mortgage in part with funds

---

3. This statement assumes that the Farreys obtained the money to pay off their mortgage from their son Mike Woodward. The source of the pay off money is a disputed issue that the Court must resolve in ruling on this matter.

generated by the Harrys' drug enterprise,[4] but the Harrys' only connection to the property is through Mike Woodward, an unindicted and unconvicted co-conspirator, who is the Farreys' son. The question is whether that connection is enough to cause the Farreys' home to be forfeited to the United States. The answer to the question turns on a careful examination of the language of the statute with consideration given to its purpose.

■ A plain language interpretation of the statute suggests that the United States has no right or authority to forfeit the Farreys' home. Plainly, the Farreys have not been "convicted" within the meaning of § 853(a). Nor did the Harrys "acquire" the house at 243 E. High Street in any commonly understood sense of the word acquire as used in the statute, because the *Farreys* bought the property several years earlier. *See* 21 U.S.C. § 853(d)(1). However, courts must be *careful to avoid an interpretation of § 853 that might violate Congress' directive that the statute be given a liberal construction to effectuate its purpose,* 21 U.S.C. § 853(*o* ), as Congress intended for prosecutors to have some latitude in pursuing the assets of drug dealers. *Benevento,* 663 F.Supp. at 1118; S.Rep. No. 225, 98th Cong., 1st Sess. 192. Therefore, consideration must be given to the purpose of the forfeiture statute.

■ The purpose of this criminal forfeiture statute is to strike at the heart of the drug business—the pocketbook. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 191–92, 212 (1983), *reprinted in,* 1983 U.S.C.C.A.N. 3182, 3395. By taking away impressive yachts, fancy sports cars, countryside chalets, and large sums of cash, forfeitures disgorge the pocketbooks of drug dealers by depriving them of their ill-gotten gains and deter others from entering into the drug business by tarnishing its otherwise lustrous financial appeal. *See id.* However, § 853, in its current form, was not intended to expand the scope of property subject to forfeiture, but only to improve the procedures applicable to forfeiture cases, including providing measures to combat pre-conviction transfers of assets or concealment of assets. *Id.* at 192.

Undoubtedly, the Harrys must suffer the severe economic consequences Congress intended for them, and they have—they have been sentenced to prison terms, they have given up their home, and they are responsible to the United States for approximately $186,000.00 in cash. But should the Farreys suffer a similar fate even though they have never been convicted of a federal drug crime and even though FBI Agent David Weisman after investigation believes they were not involved in any sales of illegal drugs or otherwise partners with the Harrys?

After careful deliberation, the Court is persuaded that Congress did not intend for the forfeiture statute to reach the Farreys' lifelong home. Nothing in the language of the statute nor the legislative history of the 1984 amendments to the criminal forfeiture statute indicates it was meant to reach a couple's lifelong home on the ground that the mortgage balance might have been paid out of drug proceeds of an unindicted, unconvicted co-conspirator. The Farreys' home is not property in which the Harrys had any interest nor enjoyment, nor did Mike Woodward for that matter. Forfeiting the Farreys' home would not disgorge any drug dealer of the profits of drug dealing. Forfeiting the Farreys' home would not tarnish the lucrative financial luster of drug dealing as no drug dealer would suffer.

Under the precise terms of the statute, the Court finds that the government has failed to establish by the preponderance of the evidence that the property at 243 E. High Street was acquired by the Harrys during the period of their unlawful conduct and that there was no likely other source for such property other than the defendants' unlawful conduct. 21 U.S.C. § 853(d).[5] Alternatively, the Court finds that the Farreys have proven by a preponderance of the evidence that they

---

4. The pay off was for $10,399.52. The value of the house is approximately $35,000.00.

5. Because the Court finds that the government has not satisfied the acquisition element (§ 853(d)(1)), no extended discussion of the source element (§ 853(d)(2)) is provided. The Court would note that for the reasons discussed in relation to § 853(n)(6), the government cannot carry its burden as to the source element.

have in interest in the property that vested before and is superior to any interest the Harrys have in the property or that they are bona fide purchasers for value. 21 U.S.C. § 853(n)(6).

In terms of § 853(d), the Court finds that the government has failed to prove both that the property was "acquired" by the defendants and that there was no likely source of the property other than the defendants' unlawful conduct. 21 U.S.C. § 853(d)(1) & (2). Each element of § 853(d) is considered in turn.

■ The precise statutory term is "acquired," the verb form of acquire, but it is not defined in the statute. The term acquired "is not a term of art in the law of property but one in common use. It is regularly applied to a permanent acquisition, and some substantial ownership in the property acquired. It usually implies a vesting of interest or title; ...." 1A C.J.S. at 283 (1985) (citations omitted). Acquire means "to attain; to become the owner of; to come to have; to earn; to gain the ownership of; to gain permanently; to get; to get as one's own; to get as owner." *Id.* at 282–83 (1985) (citations omitted). Even in a broader sense, acquire means "to come into possession, control, or power of disposal of, often by some uncertain or unspecified means." *Id.* at 283 (citations omitted).

The defendants, the Harrys did not acquire the Farreys' house at 243 E. High Street under any definition above. The house was not given to the Harrys as payment for a drug debt nor did the Harrys purchase the house. The Harrys never acquired title to the house nor took over possession of the house and at no time attained a power of disposal over the house. There was no direct acquisition of the 243 E. High Street property by the Harrys. Likewise it cannot be said that any designee of the Harrys purchased or controlled the house on the Harrys' behalf. *Cf. Herrero,* 893 F.2d at 1542 (forfeiture of real property appropriate where "titleholder" was mere nominal owner for drug kingpin who lived in property with family). The Farreys purchased the house in 1972 and have remained titleholders and possessors and controllers of the house ever since. Simply because the Harrys agreed to the forfeiture of the 243 E. High Street property does not mean forfeiture is proper; the Harrys cannot agree to forfeit property in which they have no interest.

The government contends that forfeiture is appropriate because Mike Woodward shared in the proceeds of the Harrys' drug business and provided the Farreys the money for the mortgage payment out of those proceeds, meaning the property constitutes or was derived from proceeds of illegal drug activities. It appears to be the government's position that any and all property purchased with money traceable to drug sales for which the government has obtained a conviction is subject to forfeiture as "acquired" property under § 853(d)(1), no matter how far removed the purchaser of the property is from the illegal drug activity. In particular, the government asserts that the Farreys' house should be forfeited even though the government has produced no evidence that the Farreys were involved in drug trafficking and little or no evidence that the Farreys knew the money used to pay off their mortgage was drug money.

The Court rejects such an extension of § 853. Even though the government may be entitled to attach and forfeit Mike Woodward's share of the profits from dealing drugs with the Harrys, the government is not necessarily entitled to forfeit the Farreys' house. The government still must show acquisition, if not by the Harrys than at least by Woodward, and the government has not made such a showing. Even if Woodward's money was used to pay off the mortgage, it has not been shown that he "acquired" any interest in the Farreys' house. Woodward surely did not possess or control the house or attain any power of disposal of the house or otherwise acquire the property within the meaning of any of the definitions listed previously.

■ The government's position also overlooks the fact that Woodward is not a convicted person under the statute. 21 U.S.C. § 853(a). Only convicted persons can be forced to face forfeiture as a punishment. *Id.* Though the statute does not identify

who can be considered convicted persons, the statute cannot possibly reach Woodward as he has never been indicted much less convicted.[6] To be sure, the government can hold the Harrys jointly and severally liable for profits shared with Woodward. *Benevento,* 663 F.Supp. at 1118. But that does not mean that the government can chase after Woodward's assets and retrieve them from third parties.

Under a plain reading of the statute with due consideration given to its purpose, the Court finds that the United States has not carried its burden of proving that the property at 243 E. High Street should be forfeited. Alternatively, the Court finds that the Farreys have carried their burden of proving that they have in interest in the property at 243 E. High Street that vested before and/or is superior to any interest the Harrys have in the property, or that they are bona fide purchasers for value. 21 U.S.C. § 853(n)(6).

The problem in this case is that the provisions of 21 U.S.C. § 853(n)(6) do not neatly fit the Farreys' factual situation and legal arguments. The Farreys did not buy their house from or for either the Harrys or Mike Woodward. The Farreys have denied using any of Mike Woodward's money to pay off their mortgage. The Farreys also have argued that even if the Court were to find that some of Mike Woodward's money was used to pay off their mortgage, they had no knowledge of its illegal origin. In combination, these arguments suggest that the Farreys are more like "innocent owners" rather than persons with superior interests or bona fide purchasers for value. *Compare United States v. A Parcel of Land, Buildings, Appurtenances and Improvements, Known as 92 Buena Vista Avenue, Rumson, New Jersey,* —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (discussing the "innocent owner" defense under 21 U.S.C. § 881(a)(6) in the context of a person who purchased real estate with money received as a gift without knowing the money was illegal drug proceeds).

Many of the background facts relevant to determining the Farreys' interest are undisputed. It is undisputed that the Farreys purchased the house in 1972 for $14,000.00, sixteen (16) years before the illegal drug conspiracy charged in the indictment against the Harrys. The Farreys made a downpayment of $400.00 and made monthly mortgage payments of $90.00 until 1989, when the mortgage balance was paid off in one lump sum of $10,399.52. It is also undisputed that when the Farreys bought the house, they bought it as sole owners, subject only to the mortgage held by the Farmers Home Administration. It is undisputed that the Farreys have lived in the house since buying it in 1972. The house is worth approximately $35,000.00. Other facts and evidence will be noted as pertinent. The government has produced no evidence casting a cloud on the Farreys' title to the house at 243 E. High Street other than the dispute over whether or not the Farreys paid off their mortgage with drug money.

The Farreys assert that the above facts show that their interest in the house at 243 E. High Street vested long before the Harrys gained any interest in the property. Alternatively, the Farreys argue that their interest is superior to any interest held by the Harrys making total forfeiture inappropriate. The government contends that to satisfy § 853(n)(6)(A) the Farreys must show that they acquired their entire interest without the use of drug proceeds and then further asserts that it is inconceivable that the Farreys could have paid off their mortgage without using Mike Woodward's drug money.

The Court is persuaded that the Farreys' interest in the property invalidates the order of forfeiture entered on April 12, 1991. The Court rejects the governments assertion that it is inconceivable that Bob Farrey could have saved enough money to pay off his mortgage. The evidence is undisputed that Bob Farrey has been saving money for 17 years for the very purpose of paying off the mortgage on the house. As a mathematical matter, Bob Farrey only needed to save ap-

**6.** The Court recognizes that the government has chased many of the assets of Mike Woodward. However, nobody has made a claim for those assets alleviating the Court of any need to decide whether those assets can be reached under § 853.

proximately $500.00 per year to obtain the $9600.00 deposited the day or so before he made the mortgage payment. That is not an unbelievably grand yearly sum, even for persons of modest means.

The government also asserts that it is inconceivable that Bob Farrey would have kept that kind of money hidden in the house rather than at a bank. The Court is not persuaded that it is impossible that people save money at home. It is an historical fact that many people refused to save money in banks after the Great Depression. Mrs. Farrey testified that she found money around the house on two occasions, finding $1500 and $300 respectively. The government did not produce any evidence to contradict the testimony of the Farreys.

The government responds by pointing to the evidence that Mr. Farrey made a trip to Mike Woodward's safety deposit box the same day he deposited the $9,600.00 that allowed him to pay off the mortgage, and that Bob Farrey has used money from Mike Woodward's safety deposit box in the past. The government asserts that this evidence creates a strong inference that $9,600.00 was indeed withdrawn from the safety deposit box and used to pay off the mortgage.

There are breaks in this inferential chain. First, Bob Farrey testified that he kept personal papers in the safety deposit box. Second, the $9,600.00 deposit does not bear any particular relationship to the remaining mortgage balance. FBI Agent Weisman testified that Mr. Farrey still had $4000 left in his checking account after paying off the mortgage, indicating that Farrey only needed to withdraw $6000–7000 to make the payment. Therefore, it is equally plausible to infer $9,600.00 happened to be the sum total of 17 years of putting cash in a steel box in a drawer.

After weighing all of the evidence, including weighing the credibility of Mr. and Mrs. Farrey, the Court finds that all right, title, or interest in the 243 E. High Street property was vested in the Farreys. *United States v. Campos*, 859 F.2d 1233, 1238 (6th Cir.1988);

*United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir.1987). Accordingly, the April 12, 1991, order of forfeiture is invalid in whole as to the property at 243 E. High Street and must be quashed.

The Court also finds that the Farreys are bona fide purchasers for value under § 853(n)(6)(B). In the most literal and simplistic sense, the Farreys easily satisfy the terms of the statute. The Farreys bought the house in 1972, and made mortgage payments for sixteen years before the illegal drug activities of the Harrys took place. The Farreys clearly could not have had reason to believe the property was subject to forfeiture.

Even factoring in the possibility that the money used to pay off the mortgage was drug money, the Farreys have carried their burden of proving that they had no knowledge of the money's illegal origin. The Farreys did not know or associate with the Harrys. Their son, Mike Woodward, had his own life as an adult; he did not live at home. FBI Agent Weisman testified that he does not believe the Farreys were involved in any illegal drug activity. The worst that can be said of Bob Farrey is that he took money made freely available to him by his son, Mike Woodward, and paid the mortgage on his house. The Farreys are bystanders without any connection to any illegal drug activity and, therefore, should not be subjected to the penalty of forfeiture. *See United States v. Lewis*, 987 F.2d 1349, 1355 (8th Cir.1993) (there must be more than an insubstantial, incidental or fortuitous connection between the property and the underlying illegal drug activity for forfeiture under § 853(a)(2), *citing United States v. Premises Known as 3639 2nd Street, N.E., Minneapolis, Minnesota*, 869 F.2d 1093, 1096 (8th Cir.1989)); *see also United States v. A Parcel of Land, Buildings, Appurtenances and Improvements, Known as 92 Buena Vista Avenue, Rumson, New Jersey*, —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993).[7]

**7.** The Court recognizes that the *92 Buena Vista Avenue* case is not directly on point but the analytical approach used supports this Court's conclusion that Congress did not intend for the forfeiture statutes to reach into situations like the Farreys'.

■ If the Court is in error in finding that the entire interest in the 243 E. High Street property was vested in the Farreys or that the Farreys were bona fide purchasers,[8] the Court would still find that the Farreys interest in the property was superior to any interest of the Harrys or Mike Woodward and, therefore, any interest of the United States. Upon such a finding, the Court would declare the April 12, 1991 order of forfeiture invalid in part. Even if the Farreys used $9,600.00 in drug proceeds to make the final payment on their mortgage, the United States' interest is at most a one-third ($\frac{1}{3}$) interest in the house.[9] It would not seem appropriate for the Court to order forfeiture under those circumstances. *See* 21 U.S.C. § 853(n)(6) (forfeiture orders may be found invalid in whole *or in part* and amended accordingly). Instead, the United States likely would be entitled to a lien against the Farreys in the amount of $9,600.00.

The government appears to take the position that forfeiture is all or nothing; that the Farreys either acquired their entire interest in the house so that the United States gets nothing or the Farreys did not acquire their entire interest making the house subject to forfeiture and the United States gets the whole ball of wax. This position is contrary to the language of the statute. Section 853(n)(6) permits a finding of partial invalidity of the April 12 1991 forfeiture order on the basis that the Farreys' interest was *superior* to that of the Harrys and allows amendment of the forfeiture order consistent with such a finding. The government's position also is contrary to developing case law requiring proportionality in forfeitures under 21 U.S.C. § 853. *See United States v. Harris*, 903 F.2d 770 (10th Cir.1990); *United States v. Feldman*, 853 F.2d 648, 663 (9th Cir.1988); *United States v. Littlefield*, 821 F.2d 1365,

1368 (9th Cir.1987); *United States v. Busher*, 817 F.2d 1409, 1415 (9th Cir.1987); *United States v. Robinson*, 721 F.Supp. 1541, 1543 (D.R.I.1989).

Finally, the government's position is contrary to common sense. If the government's position were given full force and effect, the government would be entitled to forfeiture of the house if only the last dollar of the mortgage was paid with drug proceeds. Congress could not have intended such a inequitable result.

There are a few remaining issues before the Court such as whether the burdens of proof and persuasion under 21 U.S.C. § 853 are constitutional, and whether Mrs. Farreys' interest in the house is separate from Mr. Farreys' interest. The Court does not address these issues as a ruling is unnecessary in light of the other rulings contained in this order.

### III. CONCLUSION.

This case is but another example of the potential injustice spawned by the overexuberant use of the forfeiture statute to fight the war on drugs. If the Court were to reach any other result it would be an accomplice to the perpetration of an injustice. This case never should have gotten as far as it has. The Farreys purchased their house in 1972, approximately sixteen (16) years before any drug activities involved in this case took place. The Farreys have been living in the house at 243 East High Street for twenty-one years; it is their home. The only connection the Farreys' home has to drug trafficking is the allegation that approximately $9,600.00 of the remaining mortgage on their home was paid with alleged drug proceeds that Mike Woodward, Elizabeth Farrey's natural son and Bob Farrey's stepson, made available to the Farreys. That amount of

---

8. The Court makes this finding if, in the event of an appeal, the United States Court of Appeals for the Eighth Circuit were to reverse the Court's rulings with regard to the applicability of the forfeiture statute and the invalidity in the whole of the previous forfeiture order. This Court reserves the right to make supplemental findings in the event of such an occurrence.

9. $9,600 is approximately one-third of the total payments made on the house. This result is expressed mathematically as follows: $90 p/mo × 193 mos. = $17,370 + $400 [downpayment] = $17,770 + 800 [difference between final payment and drug proceeds] = $18,570 + 9,600 = $28,170 [total amount paid]; $9600/$28,170 = @ $\frac{1}{3}$ (.341). $9,600 is approximately one-fourth of the current market value of the house. This result is expressed mathematically as follows: $9,600/$35,000 = @ $\frac{1}{4}$ (.274).

money represents about one quarter of the value of the Farrey's home, meaning the United States has obtained at best a one-quarter interest in that home. Nevertheless, on the basis of that $9,600.00, the United States wants to take their entire home away from the Farrey's. No private citizen could accomplish such a draconian result. Ironically, the government's case against Mike Woodward has never been tested; Woodward died an unindicted, unconvicted co-conspirator. Congress could not have intended to evict people from their lifelong homes under these kinds of circumstances.

In summary, it is the ruling of this Court that the United States has failed to carry its burden of proving that the property at 243 E. High Street is subject to forfeiture under 21 U.S.C. § 853(a) & (d). It is also the ruling of this Court that the Farreys have carried their burden of proving an interest that vested in themselves rather than the defendants and or that they were bona fide purchasers. Under either ruling the April 12, 1991 Order of Forfeiture is invalid. Accordingly,

**IT IS HEREBY ORDERED** that the April 12, 1991 Order of Forfeiture in relation to the property at 243 East High Street is quashed as indicated in the Final Order of Forfeiture filed simultaneous to this order.

### FINAL ORDER OF FORFEITURE ON UNCONTESTED PROPERTY

WHEREAS, on April 12, 1991, this Court entered an Order of Forfeiture pursuant to the provisions of 21 U.S.C. §§ 846, 841(a)(1) and 853, based upon Defendant Earl Harry's guilty plea on December 27, 1990 to Counts 1 and 2, forfeiting all of the property alleged to be subject to forfeiture in Count 2 of the Indictment;

AND WHEREAS, on April 12, 1991, this Court entered an Order of Forfeiture pursuant to the provisions of 21 U.S.C. §§ 846, 841(a)(1) and 853, against Defendant Juanita M. Harry, based upon her consent of April 11, 1991 to cooperate fully and plead to all counts in the Indictment;

AND WHEREAS, on June 24, 1991, this Court entered an Order of Forfeiture pursuant to the provisions of 21 U.S.C. §§ 846,

841(a)(1) and 853, based upon the trial jury's Guilty Verdict against Juanita M. Harry on Count 1 and Special Verdict forfeiting all of the property alleged to be subject to forfeiture in Count 2 of the Indictment;

AND WHEREAS, the United States published in the Darlington, Wisconsin, *Republican Journal,* a newspaper of general circulation, notice of the April 12, 1991 Orders of Forfeiture along with the June 24, 1991 Order of Forfeiture beginning on August 3, 1991, notice being published once a week for three weeks with the last publication date being September 12, 1991.

AND WHEREAS, on July 31, 1991, Eddie R. Farrey was personally served with copies of the Notice and Orders of Forfeiture by the United States Marshal's Service;

AND WHEREAS, on July 31, 1991, Elizabeth A. Farrey was personally served with copies of the Notice and Orders of Forfeiture by the United States Marshal's Service;

AND WHEREAS, on August 20, 1991, Lynn Woodward was personally served with copies of the Notice and Orders of Forfeiture by the United States Marshal's Service;

AND WHEREAS, it appears from the record that no other claims, contested or otherwise, have been filed for any of the properties described in this Court's April 12, 1991 and June 24, 1991 Orders of Forfeiture except a parcel of property located at 243 East High Street, Shullsburg, Layfayette County, Wisconsin, titled to Eddie R. Farrey and Elizabeth A. Farrey and legally described as:

Lots One and Four in Block Two of Robert's Addition to the City of Shullsburg, according to the recorded plat thereof, in Lafayette, County, Wisconsin.

It is therefore

ORDERED:

1. That the right, title and interest to all of the hereinafter described property, whether real, personal and/or mixed, of the Defendants named, is hereby condemned, forfeited and vested in the United States of America, and shall be disposed of according to law.

2. That the following property is hereby condemned and forfeited to the United States of America, as follows:

a. *Real Property.* All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments, and easements, legally described as:

the north 13 acres of the NE–¼ of the SE–¼ of Section 22–2–1; Town and Range above referred to being Town 2 North, Range 1 East of the 4th P.M. in Lafayette County, Wisconsin,

said property belonging to Earl Harry and Juanita Harry, husband and wife as joint tenants, as shown by a deed recorded in Title Vol. 191, Page 107, Document No. 224737, of the Land Records for Lafayette County, Wisconsin.

b. *Cash Proceeds.* Approximately $186,-625.00 in United States currency, in that such sum, at a minimum, in the aggregate was received in exchange for the distribution of controlled substances, to wit: cocaine, a Schedule II Controlled Substance, and marijuana, a Schedule I Controlled Substance, and was subsequently expended, spent, distributed, or otherwise disposed of during the period beginning about 1988 and continuing to August 1990.

c. *Real Property.* All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements, legally described as:

Lots Two (2) and Three (3) in Block Eight (8) of Northeast (NE) Shullsburg in the City of Shullsburg, according to the plat thereof

and located at 223 East Pious Street, Shullsburg, Lafayette County, Wisconsin, said property is titled to Eddie R. Farrey as shown by a deed recorded in Title Vol. 201, Page 438, Document No. 238567, of the Land Records for Lafayette County, Wisconsin.

d. *Vehicle.* One brown 1984 Ford F–250 4x4 pickup truck, VIN # IFTHF26L1EPA91258, registered to Michael Woodward, Box 193, Shullsburg, Wisconsin.

e. *Vehicle.* One 1988 Pontiac LeMans, VIN # KL2TN5161JB334724, registered to Elizabeth Farrey, Shullsburg, Wisconsin.

3. That a copy of this Order shall be recorded forthwith by the United States Marshal or his duly authorized designee in every county in which any of the hereinafter described real property is located, and when recorded, shall be notice to any potential transferee of the right, title and interest of the United States of America therein.

4. That any and all forfeited funds, including but not limited to currency, currency equivalents and certificates of deposit, as well as any income derived as a result of the United States Marshal's management of any property forfeited herein, and the proceeds from the sale of any forfeited property, shall be deposited forthwith by the United States Marshal into the Department of Justice Assets Forfeiture Fund in accordance with 28 U.S.C. § 524(c) and 21 U.S.C. § 881(e).

### FINAL ORDER ON CONTESTED FORFEITURE MATTERS

In orders dated April 12, 1991, and June 24, 1991, this Court entered orders of forfeiture on a parcel of property described in paragraph six of Count 2 of the Indictment as: "All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements, legally described as:

Lots One and Four in Block Two of Robert's Addition to the City of Shullsburg, according to the recorded plat thereof, Lafayette, County, Wisconsin

and located at 243 East High Street, Shullsburg, Lafayette County, Wisconsin, said property is titled to Eddie R. Farrey and Elizabeth A. Farrey as shown by a deed recorded in the Title Vol. 172, Page 182, Document No. 202837 of the Land Records for Lafayette County, Wisconsin." Eddie R. Farrey and Elizabeth A. Farrey filed a Motion to Quash to challenge the forfeiture of the above-described property. This Court held an evidentiary hearing pursuant to 21 U.S.C. § 853(n) on the Motion to Quash and took under advisement all issues concerning the forfeiture of the above-described property.

In an order filed simultaneous to this order, the Court has granted the Motion to Quash, ruling that the United States is not

entitled to forfeiture of the above-described property. That order is adopted as if fully set out herein. Accordingly,

**IT IS HEREBY ORDERED** that the United States' claim of forfeiture is quashed and the Court's April 12, 1991 and June 24, 1991 Orders of Forfeiture in relation to the property described as "[a]ll that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements, legally described as:

> Lots One and Four in Block Two of Robert's Addition to the City of Shullsburg, according to the recorded plat thereof, Lafayette, County, Wisconsin

and located at 243 East High Street, Shullsburg, Lafayette County, Wisconsin, said property is titled to Eddie R. Farrey and Elizabeth A. Farrey as shown by a deed recorded in the Title Vol. 172, Page 182, Document No. 202837 of the Land Records for Lafayette County, Wisconsin," are vacated.