No. 95-207

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

---

STATE FARM FIRE AND CASUALTY COMPANY,

      Plaintiff and Appellant,

  v.

DARRELL POWELL, and JACK SMITH, as
guardian ad litem for NATASHA SMITH,
and as Personal Representative of the
Estate of CHRISTINA SMITH, deceased,

      Defendants and Respondents.

FILED

NOV 21 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         Lyman H. Bennett, III, Morrow, Sedivy & Bennett,
Bozeman, Montana

     For Respondent:

         Anne Biby, Bottomly Law Offices,
Kalispell, Montana  (for Smith)

---

Submitted on Briefs:  August 31, 1995

Decided:  November 21, 1995

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiff, State Farm Fire and Casualty Company, filed a complaint in the District Court for the Eighth Judicial District in Cascade County in which it sought a declaratory judgment to the effect that the insurance policy it issued to Darrell Powell did not provide liability coverage for his collision with Christina Smith on August 8, 1994. State Farm moved for summary judgment. Jack Smith, who represented Christina Smith's estate and her daughter, also moved for summary judgment. State Farm's motion was denied and Smith's motion was granted. State Farm appeals the District Court's disposition of the summary judgment motions. We affirm the judgment of the District Court.

The issue on appeal is whether the District Court correctly concluded that the vehicle operated by Darrell Powell at the time of his collision with Christina Smith was an "insured vehicle" according to the terms of State Farm's policy issued to Powell.

### FACTUAL BACKGROUND

In December 1993, Darrell Powell entered into an oral agreement to buy a 1971 Ford truck from his brother and sister-in-law, Walter and Amanda Powell. Walter and Darrell agreed that Darrell would make payments for the Ford when able and that he would become the owner of the truck after he had paid the full $1200 purchase price. Until the full purchase price was paid on July 10, 1994, Walter continued to insure the Ford with his own

2

carrier. On one occasion, Darrell paid the premium amount to Walter, who then sent the premium to his carrier.

During the seven month period that Darrell made payments to Walter, Walter and Amanda kept the truck at their home and used it as their own. From time to time, Darrell would notify Walter and Amanda that he wanted to use the truck, and he would do so if it was available at the time he needed it. Walter and Amanda, however, continued to use the truck in exactly the same manner they had used it prior to their oral purchase agreement with Darrell.

In January 1994, while Darrell was making payments to Walter, the truck's registration expired. Walter and Darrell agreed that Darrell should register the truck in his name so that he would not have to re-register the vehicle later that year. In order to register the truck, Darrell's name had to appear on the title. Walter transferred the title, and Darrell registered the Ford truck in his name on January 28, 1994. A new title was issued in Darrell's name on March 11, 1994.

On July 10, 1994, Darrell made the final payment for the Ford truck. On that date, Walter and Amanda cancelled their insurance policy which covered the truck and executed a bill of sale which stated:

> We, the undersigned, hereby sell to Darrell L. Powell, a 1971 3/4 Ton 2 Wheel Drive Ford Pickup - green and white in color. Debt is paid in full on this date.
>
> DATED this 10th day of July, 1994.

Although Darrell continued to leave the truck at Walter's house after July 10, Darrell then used the truck at will, whereas Walter asked Darrell's permission to borrow it. According to their affidavits, Walter and Amanda intended that ownership of the truck pass to Darrell on the date he finished paying for it. After July 10, 1994, Walter and Amanda no longer considered themselves the owners of the Ford truck.

On August 8, 1994, while attempting to walk across U.S. Highway 2 near Havre, Christina Smith was struck by the Ford truck which was being operated by Darrell. Christina died seven hours later as a result of injuries caused by the collision.

Jack Smith, as personal representative of Christina's estate and guardian ad litem of her five-year-old daughter, filed an action against Darrell Powell in the District Court of the Twelfth Judicial District in Hill County. That action is still pending. Powell's insurance provider, State Farm, then filed this declaratory judgment action to avoid coverage for Powell's potential liability. State Farm insured Powell's 1986 Mazda pickup truck at the time of the collision, but maintained that the Ford truck he was operating was not an insured vehicle.

On April 4, 1995, the District Court granted Smith's cross-motion for summary judgment, based on its determination that the Ford truck was insured as a "newly acquired vehicle" according to the terms of Powell's insurance policy. On April 20, the court entered a declaratory judgment in favor of Smith.

4

## STANDARD OF REVIEW

This Court reviews a summary judgment order entered pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. *Brinkman and Lenon v. P & D Land Enterprises* (1994), 263 Mont. 238, 241, 867 P.2d 1112, 1114. Rule 56(c), M.R.Civ.P., provides that summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

Because our review of summary judgment is plenary, we decline to review two of State Farm's claims on appeal: first, that the trial court failed to consider State Farm's reply brief before issuing its order; and second, that the court did not state with sufficient particularity its reasons for granting Smith's summary judgment motion. Since we review the entire record, including State Farm's reply brief, *de novo*, we hold that the District Court's failure to consider that brief was, at best, a harmless error. Furthermore, there was nothing in State Farm's three-page reply brief which even addressed the issue on which the District Court's judgment was based. Therefore, State Farm's substantial rights could not have been affected by the District Court's failure to consider it.

We also hold that the District Court's order granting summary judgment, though not exhaustive, was sufficient to apprise the parties of the court's rationale for concluding that Powell's Ford

truck was an insured vehicle according to the terms of State Farm's policy.

## DISCUSSION

Did the District Court correctly conclude that the vehicle operated by Darrell Powell at the time of his collision with Christina Smith was an "insured vehicle" according to the terms of State Farm's policy issued to Powell?

State Farm contends that it did not insure Darrell's operation of his Ford truck on August 8, 1994, because on that date the truck was not an "insured vehicle" as required by Powell's insurance policy. According to State Farm, Powell's truck was not an "insured vehicle" because it was neither (a) "your car," (b) a "newly acquired car," (c) a "temporary substitute car," or (d) a "non-owned car," as required by the terms of the policy.

State Farm reasons that "your car" can only be the car described on the declarations page, in this case the 1986 Mazda truck. However, since Powell had purchased the 1971 Ford truck and the title had been transferred, neither was it a "non-owned car," and it was not a "temporary substitute car," which is also defined as a non-owned vehicle. State Farm further maintains that the Ford was not a "newly acquired car" because Powell did not notify the company of his acquisition of the vehicle within thirty days after the date on which he acquired an ownership interest. State Farm relies on our decision in *Colonial Insurance Co. v. Blankenship* (1988), 231 Mont. 469, 753 P.2d 880, to establish the proposition that Powell

6

became the owner of the Ford when he acquired title to the vehicle in January 1994, rather than when Walter and Amanda executed the bill of sale on July 10, 1994.

Although we agree that *Colonial Insurance* would be the starting point for determining Powell's ownership of the vehicle, we hold that "delivery," and not "ownership," is the definitive date from which to determine coverage based on State Farm's policy. The plain language of State Farm's policy provides that:

> *Newly Acquired Car* - means a *car* newly owned by *you* if it . . . is an added *car* and . . . [is] owned by *you* on the date of its delivery to *you*; but only if *you* . . . tell us about it <u>within 30 days after its delivery to *you*</u> . . . .

(Underlining added.) The policy clearly states that the thirty-day grace period is to run from the date of delivery, not from the time an ownership interest is acquired.

The sincerity of State Farm's argument in this case must be questioned in light of the inconsistent position it has taken in the past when it was to its advantage to do so. In the past, State Farm has taken the position that the date of delivery is the crucial date from which to determine coverage for a newly acquired vehicle. In *L'Allier v. Turnacliff* (N.M. 1988), 758 P.2d 796, Turnacliff took possession of a car on October 21, before the title was transferred or payment was made. After Turnacliff was involved in an accident on November 28, State Farm argued that the dispositive date for coverage under its "newly acquired car" provision--identical to the provision in Powell's policy--was the date of

7

delivery. The *L'Allier* court agreed that according to the policy language "the newly acquired car provision began to run when the newly acquired car was 'owned' and 'delivered' to Turnacliff." *L'Allier*, 758 P.2d at 797. The court stated:

> The dispositive issue on appeal is whether, as a matter of law, the thirty-day notice period under the newly acquired car provision in Turnacliff's automobile insurance policy began to run when Turnacliff took delivery of the car. We hold that delivery is a critical element of ownership of a car, and when the circumstances indicate that the parties intended for ownership of the car to pass, delivery of the car is sufficient to trigger the running of the newly acquired car provision in an automobile insurance policy.

*L'Allier*, 758 P.2d at 797.

Because "delivery" is not defined in State Farm's insurance policy, we choose to give the term its ordinary meaning. We hold that in the context of the newly acquired vehicle clause, the word "delivery" signifies a handing over of physical possession and control of an automobile.

In this case, we conclude, based on uncontroverted facts, that delivery occurred on July 10, 1994, when Walter and Amanda intended to transfer ownership of the truck to Darrell, and when Darrell's physical possession and control of the truck was finally possible. Therefore, we conclude that the Ford truck operated by Darrell Powell on August 8, 1994, when he collided with Christina Smith, was a "newly acquired vehicle," and therefore, an "insured vehicle" according to the terms of State Farm's policy.

8

For these reasons, we affirm the District Court's order which denied State Farm's motion for summary judgment and granted summary judgment to the defendants.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices