# FEDERATED MUTUAL INSURANCE COMPANY, Plaintiff,

## v.

# BRENT ANDERSON, d/b/a CONIFER LOGGING, Defendant, Third-Party Plaintiff, and Respondent,

## v.

# JONES EQUIPMENT, INC., Third-Party Defendant, and JOHN DEERE INSURANCE COMPANY, Third-Party Defendant and Appellant.

No. 95-569.
Submitted on Briefs April 11, 1996.
Rehearing Denied August 9, 1996.
Decided July 12, 1996.
53 St.Rep. 618.
277 Mont. 134.
920 P.2d 97.

For Appellant: **Robert J. Phillips** and **Tammy Wyatt-Shaw**, Phillips & Bohyer, Missoula.

For Respondent: **Michael G. Alterowitz** and **Larry Howell**, Connell, Beers & Alterowitz, Missoula.

JUSTICE TRIEWEILER delivered the Opinion of the Court.

Federated Mutual Insurance Company filed a complaint in the District Court for the Fourth Judicial District in Missoula County in which it sought to recover from Conifer Logging, Inc., amounts Federated had paid to its insured, Jones Equipment, Inc., for the loss of logging equipment Jones had leased to Conifer. Conifer filed a third-party complaint against John Deere Insurance Company in which it sought indemnity for any amounts which it might owe Federated. John Deere moved the District Court for summary judgment. Conifer filed a cross-motion for summary judgment. After hearing oral arguments, the District Court entered an opinion and order in which it denied John Deere's motion for summary judgment and granted Conifer's cross-motion for summary judgment. John Deere appeals the District Court's order. We affirm the District Court and impose Rule 32 sanctions on John Deere for filing a frivolous appeal.

The issue on appeal is whether the District Court correctly concluded that the newly acquired property provision in Conifer Logging's insurance policy with John Deere Insurance Company covered logging equipment which was destroyed by fire on July 17, 1991, while in Conifer's possession.

## FACTUAL BACKGROUND

On May 29, 1991, Conifer Logging agreed to lease a 1987 Timberjack feller buncher from Jones Equipment Company. The feller buncher, which is a vehicle that cuts and stacks standing timber, was worth $130,000. The term of the lease was one to six months with an option to purchase the equipment. Before the lease began, Conifer

was entitled to a free, one-week trial period without obligation or risk. The one-week trial period was reflected in the original option to purchase, which stated that although delivery was scheduled for June 10, the first rental payment was not due until June 17 and the six-month term of the lease did not expire until six months and one week after delivery on December 17, 1991.

Jones was unable to deliver the feller buncher to Conifer's logging site on June 10, and delayed delivery until June 17. As a result, Jones prepared a revised lease agreement and option to purchase and drafted an equipment rental agreement. The revised documents reflected the fact that Conifer was entitled to a one-week free trial period and stated that the delivery date was June 17, the first payment was due on June 24, and the option had to be exercised or the feller buncher returned to Jones by December 24, 1991.

During the one-week free trial period Conifer had no contractual obligations regarding the feller buncher, and did not assume the risk of loss. Jones was liable for any damage to the equipment during that period. Once the lease commenced, however, Conifer became responsible for any damage to the feller buncher and was obligated to provide insurance coverage for it. The lease commenced on June 24, 1991, when Conifer kept the feller buncher and made its first lease payment.

In June and early July 1991, Conifer discovered serious problems with the feller buncher and decided to terminate the lease. On July 16, 1991, Conifer contacted an equipment hauler to have the feller buncher shipped back to Jones. On July 17, 1991, however, the feller buncher caught on fire and was destroyed on Conifer's logging site. Conifer notified John Deere Insurance Company of the loss on July 18, 1991.

At the time of the lease, Conifer's logging equipment was insured by John Deere Insurance Company pursuant to the terms of a "contractor's inland marine policy." That policy included a "newly acquired property" provision which provided automatic coverage for any similar property acquired by Conifer during the term of its policy provided that Conifer reported the acquisition of such property and paid an additional premium on the property within thirty days from the date on which the property was acquired.

After the destruction of the feller buncher, Federated Mutual Insurance Company paid Jones Equipment for the loss and then sued Conifer Logging for indemnification. In turn, Conifer filed a third-party complaint against John Deere Insurance Company in which it

alleged that the feller buncher was insured pursuant to its policy with John Deere. Conifer maintained that pursuant to the newly acquired property provision in that policy John Deere was required to indemnify Conifer for the full amount of any judgment recovered by Federated.

John Deere moved for summary judgment on January 31, 1995. In support of its motion, it maintained that the feller buncher was never insured by John Deere because the loss occurred before Conifer had notified John Deere of its acquisition of the property and after the thirty-day notice requirement of the "newly acquired property" provision had expired. Conifer filed a cross-motion for summary judgment in which it asserted three grounds for coverage First, Conifer maintained that using the usual methods of computation of time, the thirty-day grace period began on June 18, the day after Conifer's receipt of the equipment, and that therefore the fire on July 17 occurred within the thirty-day automatic coverage period. Second, Conifer maintained that because it had a one-week free trial period without obligation or risk, Conifer did not "acquire" the feller buncher pursuant to the newly acquired property clause until June 24, 1991, and its loss on July 17, 1991, was well within the thirty-day period for automatic coverage. Finally, Conifer maintained that John Deere's inconsistent interpretation of the language of its own newly acquired property clause established the provisions' ambiguity and required the court to interpret the clause in favor of coverage as a matter of law.

On May 30, 1995, the Fourth Judicial District Court issued an opinion and order. In its order, the court denied John Deere's motion for summary judgment and granted Conifer's cross-motion for summary judgment. The court concluded that the feller buncher "was covered by [John] Deere's policy under each of Conifer's theories."

I.

Subsequent to appeal, Conifer Logging filed with this Court a motion to strike a portion of John Deere's reply brief which Conifer maintains is objectionable because "it refers to alleged evidence that is not part of the record, and also contradicts John Deere's previous 'judicial admission' on a key fact." It is well-established that this Court will not consider any evidence not contained in the record on appeal. *Johnson v. Killingsworth* (1995), 271 Mont. 1, 3, 894 P.2d 272, 273. Because we hold that the objectionable passage is purely speculative and is not supported by the record, Conifer's motion is granted and that portion of John Deere's brief is stricken.

## II.

Did the District Court correctly conclude that the newly acquired property provision of Conifer Logging's insurance policy with John Deere Insurance Company covered logging equipment which was destroyed by fire on July 17, 1991, while in Conifer's possession?

■ This Court reviews a district court's order of summary judgment pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. *Brinkman & Lenon v. P & D Land Enter.* (1994), 263 Mont. 238, 241, 867 P.2d 1112, 1114. We will uphold the court's grant of summary judgment if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P.; *State Farm Fire & Casualty Co. v. Powell* (1995), [274 Mont. 92], 906 P.2d 198, 200.

■ On appeal, John Deere maintains that it had not provided insurance coverage for the feller buncher pursuant to the newly acquired property provision of its insurance policy with Conifer because the loss occurred before Conifer notified John Deere of its acquisition of the feller buncher and after the thirty-day notice provision of the newly acquired property provision of that policy had expired. The newly acquired property provision of Conifer's policy with John Deere provides:

If the insured acquires during the term of this policy other similar property the provisions of this policy shall apply thereto for the actual cash value of other similar property not exceeding 25% of the aggregate amount of the schedule, PROVIDED the insured reports such additional similar property within 30 days from the date acquired and pays additional premium thereon from the date acquired.

Conifer took possession of the feller buncher pursuant to the terms of its lease with Jones Equipment Company on June 17, 1991. At that time, Conifer was entitled to a free, one-week trial period without obligation or risk. The trial period was reflected in both the original and revised lease agreement and option to purchase documents and in the equipment rental agreement executed by Jones Equipment. Those documents provided that the first lease payment was not due until seven days after delivery of the machine and that the six-month term of the lease did not expire until six months and one week after delivery.

In an affidavit submitted by William Jones, president of Jones Equipment, Jones stated that during the one-week free trial period

Conifer had no contractual obligations regarding the feller buncher, that Conifer did not assume risk of loss until after that trial period, and that Jones was liable for any damage to the equipment during that period.

Furthermore, although John Deere now refutes that Conifer's lease of the feller buncher was delayed during the pendency of the one-week free trial period, John Deere's insurance adjuster who interviewed representatives of both Jones Equipment and Conifer Logging and who reviewed all of the lease documents, stated otherwise. In a letter to Conifer Logging on August 21, 1991, the adjuster stated:

> [I]t was an agreed intention between the parties to have Conifer Logging try out this machine for a free week or "demo week." *If you felt the machine was suitable to your purposes at the end of that week you would commence a lease arrangement with Jones Equipment* .... Originally the machine was to be delivered to you on 6/10/91 and the first rental payment would be due 6/17/91. Due to a delay in preparation of the machine for use Jones Equipment wrote a second lease agreement and option to purchase which showed the delivery date on the machine of 6/17/91 with a rental payment to commence on 6/24/91. *Both of these documents reflect the "demo week" previously referenced.*
>
> The machine was delivered 6/17/91 and your lease payment would have been for the month commencing on 6/24/91. The fire loss occurred either July 17 or July 16, 1991. Your policy requires a 30 day waiting period before a new machine qualifies for coverage and that waiting period would not have been satisfied until 7/24/91.

(Emphasis added.)

The adjuster's letter unambiguously reflects that John Deere knew that the free trial week delayed the start of Conifer's lease until June 24. At the time of the adjuster's letter, John Deere took the position that its newly acquired property provision required a thirty-day "waiting period" before coverage would be provided for new equipment. Its position at that time was that that thirty-day "waiting period" did not expire until thirty days after the lease commenced— on July 24, 1991. Now that John Deere has changed its position and asserts that the thirty-day requirement is a "notice period" and not a "waiting period," it maintains that the lease commenced on June 17 and that the "notice period" expired thirty days thereafter—on July

17, 1991. In light of its prior position, the sincerity of John Deere's current argument must be questioned.

In addition, John Deere now maintains that even if the free trial week did delay the start of the lease until June 24, Conifer nevertheless "acquired" the feller buncher for purposes of the newly acquired property provision on June 17, when Jones Equipment delivered the machinery. Citing *Merriam Webster's Collegiate Dictionary*, 10 (10th ed. 1993), John Deere asserts that the ordinary, usual meaning of "acquire" is "to come into possession or control of." John Deere maintains that Conifer exercised full supervision and control over the feller buncher, and thus "acquired" the feller buncher on June 17, 1991.

The term "acquire," however, is susceptible to more than one construction. As the term is generally used, it "implies substantial ownership, something more than a temporary possession." 1A C.J.S. *Acquire* at 282 (1985) (citations omitted). In fact, the term "is regularly applied to a permanent acquisition, and some substantial ownership in the property acquired. It usually implies a vesting of interest or title." 1A C.J.S. *Acquire* at 283 (1985) (citations omitted). It is well-established that "if the terms of an insurance policy are ambiguous, obscure or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail." *Head v. Central Reserve Life of N. Am. Ins. Co.* (1993), 256 Mont. 188, 200, 845 P.2d 735, 742.

A construction of the term "acquire" which requires some vested interest is particularly warranted in a situation such as this where neither party to the lease intended any ownership interest or risk of loss to pass until the free trial week ended and the period of the lease began. In this case, in fact, Conifer did not need insurance during that one-week period since risk of loss remained with Jones Equipment during that period. As the Court of Appeals of Kansas recently noted:

> Insurance authorities are generally in accord that the newly acquired coverage clause is offered as a convenience to the insured, and *its purpose is to broaden the coverage available under an automobile insurance policy to provide protection at the earliest possible time needed by the insured.* See 6B Appleman, Insurance Law and Practice § 4293 (Buckley ed. 1979); 12 Couch on Insurance 2d § 45.184 (rev. ed. 1981).

*Northern Assur. Co. v. Farm Bureau Mut. Ins. Co.* (Kan. App. 1991), 808 P.2d 911, 915 (emphasis added). Although the Kansas Court's statement addresses newly acquired vehicle provisions in automobile

liability policies, there is no reason the principle should not apply equally to newly acquired property provisions in property liability policies. *See, e.g., McNaul v. Kansas Power & Light Co.* (Mo. Ct. App. 1989), 770 S.W.2d 259, 262. In this case, Conifer did not contractually assume the risk of loss for the feller buncher until June 24 so that any insurance coverage provided by John Deere prior to that time would have been unnecessary.

In this case, the uncontroverted facts establish that although the feller buncher was delivered on June 17, 1991, Conifer's lease of the machinery was delayed by the one-week free trial period and did not start until June 24, 1991. Because neither Conifer nor Jones intended any ownership interest or risk of loss for the feller buncher to pass to Conifer until the lease commenced, we hold that Conifer did not "acquire" the feller buncher pursuant to the newly acquired property provision of its lease with John Deere until June 24, 1991. Therefore, we conclude that the destruction of the feller buncher on July 17, 1991, and Conifer's notice to John Deere of the loss on July 18, 1991, were within the thirty-day period of automatic coverage provided by Conifer's policy with John Deere. For these reasons, we affirm the District Court's order which denied John Deere's motion for summary judgment and granted Conifer's cross-motion for summary judgment.

### III.

As a final matter, Conifer requests that this Court sanction John Deere pursuant to Rule 32, M.R.App.P. Sanctions on appeal are appropriate when this Court "is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds." Rule 32, M.R.App.P.

This Court does not readily impose sanctions upon parties for filing frivolous appeals. However, given the inconsistent and conflicting positions John Deere has taken throughout this matter, its inaccurate citations to authority, and the lack of support for its claims on appeal, we conclude that sanctions are necessary and appropriate in this case.

The District Court granted Conifer's motion for summary judgment because of its conclusion that the feller buncher was covered by John Deere's policy based on each of Conifer's three theories of liability. On appeal, John Deere contests all three conclusions. None of John Deere's arguments against coverage, however, is supported by substantial or reasonable grounds.

■ John Deere first contends that no coverage exists because Conifer did not notify John Deere of the loss of the feller buncher within the thirty-day notice period. That position is contrary to the clear majority rule, as set forth by this Court almost thirty years ago in *Glacier General Assurance Co. v. State Farm Mutual Auto Insurance Co.* (1968), 150 Mont. 452, 436 P.2d 533. In that case, we held that a loss that occurs during a policy's period of automatic coverage vests at the moment of loss, regardless of when notice was given to the insurer. *Glacier General*, 150 Mont. at 457, 436 P.2d at 536. Even John Deere recognized the applicability of this rule when, in one of its briefs in support of summary judgment, it conceded that "timely notification is a condition precedent to continued coverage after, not during, the grace period." On appeal, however, John Deere not only ignores its earlier concession, but urges this Court to disregard the majority rule based on a misleading and selective quotation of authority. John Deere quotes *Levy v. Continental Casualty Co.* (La. Ct. App. 1973), 284 So. 2d 857, 859, for the proposition that: "To obtain coverage on an item not previously insured, the policy in unambiguous terms requires the insured to report the purchase thereof to the insurance company within thirty days ...." However, the omitted language from the passage concludes: "*otherwise all coverage on the item ceases after that period.*" *Levy*, 284 So. 2d at 859 (emphasis added). The *Levy* case, contrary to John Deere's selective quotation, actually supports the majority rule adopted by this Court in *Glacier General* that timely notice is material to continued coverage only for losses that occur *after* the expiration of the grace period.

John Deere's second argument is that Conifer "acquired" the feller buncher, within the meaning of its policy, when it came into possession of the machine on June 17, 1991, and not at the expiration of its one-week free trial period on June 24, 1991. John Deere's rigid interpretation that the term "acquire" means "possess" is not only contrary to its adjuster's initial position that Conifer "acquired" the machinery on June 24 after the expiration of the one-week trial period, but it is also contrary to the customary meaning of the term. John Deere cites *United States v. Harry* (N.D. Iowa 1993), 831 F. Supp. 679, 685, for the proposition that: "Even in a broader sense, acquire means 'to come into possession, control, or power of disposal of, often by some uncertain or unspecified means.'" However, once again John Deere has taken language out of context. The two sentences preceding the passage John Deere quotes from *Harry* contradict its argument that the "ordinary meaning" of acquire is possess:

The term acquired "... is regularly applied to a permanent acqui-
sition, and some substantial ownership in the property acquired.
It usually implies a vesting of interest or title ...."

*Harry*, 831 F. Supp. at 685. Although John Deere cites *Harry* for the
proposition that "acquire" means "possess," the general language of
*Harry* clearly requires the opposite conclusion.

John Deere's third argument in support of its position is that
no automatic coverage existed because the feller buncher was de-
stroyed thirty-one days after Conifer acquired it. According to John
Deere, the day that the feller buncher was delivered must be counted
in calculating the thirty-day period of automatic coverage. John
Deere's argument, however, is contrary to the universal rule that,
unless a contrary intent is clearly manifested, the first day or the day
upon which the act was done or the event occurred is generally
excluded in computing periods of time. Even more troubling is the
fact that, as part of its effort to urge this Court to adopt a different
method of calculation, John Deere cites four cases in support of its
position; however, three of those cases actually cite the general rule
that the first day should be excluded in calculating the thirty-day
grace period in insurance contracts and the fourth case was effec-
tively overruled more than 120 years ago. For example, John Deere
cites *American National Bank v. Service Life Insurance Co.* (7th Cir.
1941), 120 F.2d 579, 582, *cert. denied* (1941), 314 U.S. 654, 62 S.Ct.
104, 86 L.Ed. 524, to further its argument; however, on the same page
to which John Deere cites, the court states: "[W]e think the weight of
authority supports the rule of excluding the first day and including
the last where no other or different method has been indicated by the
parties." Similarly, in *Travelers Insurance Co. v. Leonard* (N.J. Ch.
1936), 183 A. 686, 686, which John Deere also cites, the Court of
Chancery of New Jersey stated: "The general rule in this state is that
in computing a period of time from an event, or from a day, the day
of the event, or (in the second case) that day, should not be included."
Furthermore, although *Perry v. Provident Insurance & Investment
Co.* (Mass. 1868), 99 Mass. 162, the fourth case that John Deere cites,
actually does state the rule for calculating time that John Deere
proposes, that case was effectively overruled by *Bemis v. Leonard*
(Mass. 1875), 118 Mass. 502. In *Bemis*, the Massachusetts Supreme
Court repudiated as dictum the very statement in *Perry* that John
Deere urges this Court to adopt:

The dictum ... in [*Perry*], that "where time is computed from an act
done, the general rule is to include the day," was aside from the

decision of the court ... and it is supported by none of the authorities cited ....

*Bemis*, 118 Mass. at 508-09. John Deere's adhesion to a disfavored method of calculation is particularly questionable in light of the overwhelming weight of authority in support of the majority rule.

Finally, John Deere's sincerity on appeal must be questioned in light of its inconsistent theories for denial of coverage which have culminated in this meritless appeal. For example, on July 18, 1991, John Deere's insurance agent wrote on the property loss notice that the policy's "30 day coverage extension should apply." On August 21, 1991, however, one of John Deere's insurance adjusters notified Conifer that John Deere was denying coverage because the thirty-day "waiting period" would not have been satisfied until July 24, 1991. The next month a different adjuster wrote to Conifer and vaguely stated that "[t]his denial is based on [sic] the unit was never scheduled, and would not qualify under [the newly acquired property provision] under your contract of insurance with us." In April, a third adjuster notified Conifer that John Deere was denying coverage because the newly acquired property provision did not cover leased equipment. It was not until the summary judgment proceedings before the District Court that John Deere set forth its theory that "the loss occurred on the 31st day after Conifer acquired the [feller buncher]." John Deere's theories for denial of coverage are not only inconsistent with each other, but are inconsistent with its position taken on appeal. Such inconsistent positions, combined with inaccurate citations to authority, underscore the lack of merit in John Deere's appeal.

Because of John Deere's meritless appeal, Conifer has incurred unnecessary and substantial legal fees to obtain the coverage to which the District Court determined it was entitled under each of its theories. In addition, Conifer has been caused unnecessary delay during the pendency of this appeal. As we stated in *Reilly v. Farm Credit Bank of Spokane* (1993), 261 Mont. 532, 535, 863 P.2d 420, 422: "When an appeal is entirely unfounded and causes delay, the respondent is entitled to reasonable costs and attorney's fees."

■ Therefore, on the basis of the inconsistent and conflicting positions John Deere has taken throughout this matter, its baseless claims on appeal, and its inaccurate citations in its appellate brief, we assess sanctions against John Deere pursuant to Rule 32, M.R.App.P., and order it to pay Conifer's reasonable costs and attorney fees incurred in defending this appeal.

The judgment of the District Court is affirmed. This case is remanded to the District Court for a determination of the costs and fees to which Conifer is entitled pursuant to this opinion.

CHIEF JUSTICE TURNAGE, JUSTICES NELSON, GRAY, HUNT, ERDMANN and LEAPHART concur.