No. 96-639

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 10N

ZOLLIE KELMAN,

Plaintiff and Respondent,

vs.

CHARLES HENRY, a/k/a CHUCK
HENRY, and ALLAN J. KOSMERL,
d/b/a B.J.B., INC. and H & K CASINO

Defendants and Appellants.

FILED

JAN 22 1998

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert J. Emmons, Emmons & Sullivan, Great Falls, Montana

For Respondent:

Steven T. Potts, Jardine, Stephenson, Blewett & Weaver, Great Falls,
Montana; Curtis G. Thompson, Thompson & Jacobsen, Great Falls, Montana

Submitted on Briefs: April 10, 1997

Decided: January 22, 1998

Filed:

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 This is an appeal from the Eighth Judicial District Court, Cascade County. On July 18, 1996, the District Court entered findings of fact, conclusions of law and a final judgment in favor of Plaintiff Kelman. From this judgment, Defendants Henry and Kosmerl appeal. We affirm.

¶3 We restate the following issues raised on appeal:

¶4 1. Did the District Court abuse its discretion by ordering Defendants Henry and Kosmerl to specifically perform the settlement agreements because such agreements were illegal due to Evelyn's illegal ownership interest?

¶5 2. Did the District Court err in finding that Defendants Henry and Kosmerl breached the settlement agreements by failing to pay Evelyn her portion of the salaries and gaming machine rent?

¶6 3. Did the District Court err in concluding that Evelyn was entitled to one-third of the rent paid from real estate she purchased from Defendant Kosmerl?

¶7 4. Did the District Court err in assessing Defendants Henry and Kosmerl with their share of attorney fees incurred to obtain gambling and liquor license approval?

¶8 5. Did the District Court abuse its discretion by awarding Evelyn attorney fees?

¶9 6. Did the District Court abuse its discretion by denying Defendant Kosmerl's

2

motion to amend the judgment?

¶10   7.     Did the District Court abuse its discretion by denying Defendants Henry's and Kosmerl's Rule 60(b), M.R.Civ.P., motion?

¶11   8.     Should Defendants Henry and Kosmerl pay Kelman's attorney fees on appeal?

## FACTUAL AND PROCEDURAL BACKGROUND

¶12   In 1989, Plaintiff Zollie Kelman (Zollie) filed a complaint in the Eighth Judicial District Court, Cascade County, against Defendants Charles Henry (Henry) and Allan Kosmerl (Kosmerl), alleging, among other things, a 50% ownership interest in B.J.B., Inc., d/b/a Nevada Sam's Casino. In 1991, a jury found that Zollie held a 50% ownership interest in Nevada Sam's Casino. On November 25, 1992, the lawsuit was settled and Zollie assigned his interest in the lawsuit and settlement to his wife Evelyn Kelman (Evelyn). In settling the lawsuit, the parties signed a Settlement Agreement, Shareholder Agreement, Partnership Agreement and Contract for Deed (collectively, the settlement agreements). Pursuant to the settlement agreements, the litigation was to be terminated and Evelyn was to acquire a one-third ownership interest in both Nevada Sam's Casino and H & K Casino, in certain assets used in connection with the casinos and in the real estate upon which the casinos were located.

¶13   Pursuant to a stipulation signed by the parties, the District Court dismissed Zollie's complaint. However, the District Court subsequently modified its order of dismissal to retain jurisdiction until the appropriate licenses were issued to the parties. On June 8, 1995, the Gambling Control Division of the Montana Department of Justice informed the parties that

3

their gambling license applications had been approved. On June 21, 1995, Zollie petitioned the District Court for specific performance of the settlement agreements. Thereafter, on December 8, 1995, pursuant to Zollie's Rule 60(b)(6) motion, the District Court vacated its previous order of dismissal.

¶14 On January 31, 1996, the District Court entered findings of fact, conclusions of law, and an order in which it ordered Henry and Kosmerl to specifically perform the settlement agreements. On July 18, 1996, the District Court entered additional findings of fact, conclusions of law and a final judgment in which it ordered Henry and Kosmerl to pay Evelyn specified amounts of damages for their breach of the settlement agreements. Subsequently, the District Court denied both Kosmerl's Rule 52(b), M.R.Civ.P., motion and Henry's and Kosmerl's Rule 60(b), M.R.Civ.P., motion. From the District Court's final judgment as well as the court's denial of the two post-judgment motions, Henry and Kosmerl appeal.

## DISCUSSION

¶15 **1.** **Did the District Court abuse its discretion by ordering Defendants Henry and Kosmerl to specifically perform the settlement agreements because such agreements were illegal due to Evelyn's illegal ownership interest?**

¶16 Henry and Kosmerl argue that the District Court erred in ordering them to specifically perform the settlement agreements at issue because the agreements were illegal. Specifically, they assert that Zollie's ownership interest in Nevada Sam's Casino, which is currently Evelyn's ownership interest, was illegal because it was derived from Bernard J. Black, who

4

during his ownership, deliberately violated liquor and gaming statutes. Because of this illegality, Henry and Kosmerl argue that the subsequent settlement agreements are unenforceable.

¶17 We agree with Zollie that Henry and Kosmerl are barred from raising this claim of invalidity concerning the settlement agreements. While Henry and Kosmerl did assert numerous affirmative defenses to Zollie's lawsuit, including the illegality of Zollie's ownership interest, they later signed a Settlement Agreement which rendered their affirmative defense of illegality moot. We note that within the Settlement Agreement Henry and Kosmerl agreed to a compromise in the entire matter by permitting Evelyn to become an owner of the casinos and property and by generally agreeing to end the litigation and specifically waiving any claims of invalidity concerning the settlement agreements. In fact, the Settlement Agreement expressly provides in part:

> 8.    Waiver of Claims of Invalidity
>
> The parties specifically waive any claims that this agreement and any documents executed pursuant to this agreement, are invalid on the basis of any assertions, opinions or rulings by any licensing agency or Court of the State of Montana, *including but not limited to*, any claims that Zollie lacks capacity to enter into this agreement due to any agreements Zollie made with the State of Montana as a result of his misdemeanor charges. [Emphasis added.]

¶18 Because Henry and Kosmerl were parties to the Settlement Agreement, their affirmative defenses merged into the settlement, and, consequently, they are barred from raising a claim of invalidity. See 15A C.J.S. Compromise & Settlement § 25 (1967). Consequently, because Henry and Kosmerl's claims of invalidity are barred, we will not

5

address this issue further. Accordingly, we hold that the District Court did not abuse its discretion when it ordered Henry and Kosmerl to specifically perform the settlement agreements at issue.

¶19 **2. Did the District Court err in finding that Defendants Henry and Kosmerl breached the settlement agreements by failing to pay Evelyn her portion of the salaries and gaming machine rent?**

¶20 On November 25, 1992, the parties signed four settlement agreements which included a Shareholder Agreement and a Partnership Agreement, both setting forth that no owner was entitled to receive any payment or distribution unless all three owners were included. Specifically, the Shareholder Agreement provides:

PART SIX

Unless otherwise agreed in writing by all of the shareholders, no shareholder or director shall be entitled to any benefit, salary, wage, or other payment or distribution in excess of any amount paid or distributed by, on behalf of, or from B.J.B., Inc. to all of the other shareholders.

Similarly, the Partnership Agreement provides:

PART TEN

Unless otherwise agreed in writing by all of the partners, no partner shall be entitled to any benefit, salary, wage, or other payment or distribution in excess of any amount paid or distributed by, on behalf of, or from the partnership to both of the other partners.

¶21 The District Court concluded that the parties' settlement agreements were effective on November 25, 1992, the date the parties executed the agreements. Consequently, the District Court found that Henry and Kosmerl had breached these agreements by failing to pay

Evelyn her portion of the wages and gaming machine rent in 1993 and 1994 as well as by failing to obtain Evelyn's consent for their receipt of wages and rent in 1993 and 1994. Therefore, the District Court ordered Henry and Kosmerl to pay Evelyn her share of the salaries and gaming machine rent.

¶22 Henry and Kosmerl argue that the District Court erred in awarding Evelyn damages for unpaid wages and rent based on its findings that the settlement agreements had a "retroactive" effective date of November 25, 1992, and that Henry and Kosmerl had breached the settlement agreements. Relying on certain 1991 statutes and administrative rules which control gambling license applications, Henry and Kosmerl assert that although the settlement agreements expressly provided that they were effective immediately upon execution (November 25, 1992), these contracts were not effective until approved by the Department of Justice on July 1, 1995. See Title 23, Part 5, MCA, and 23.16.115-119, ARM. Therefore, Henry and Kosmerl argue that because under these statutes and administrative rules Evelyn did not have a legal ownership interest in either casino until July 1, 1995, no breach of contract could occur and no damages could accrue based on their decision to pay themselves salaries and gaming machine rent without Evelyn's consent prior to July 1, 1995.

¶23 This argument is without merit. While the statutes and administrative rules cited by Henry and Kosmerl do govern gambling license applications and set forth that the operation of a gambling establishment without a license constitutes a misdemeanor, they do not govern the legality of contracts. Therefore, in this case, the fact that the casinos were not issued

7

permanent gambling licenses until July 1, 1995, did not change the fact that Evelyn, Henry and Kosmerl all became owners of the casinos on November 25, 1992, when they signed and executed the settlement agreements. See Taurman v. Town of Cascade (1981), 192 Mont. 529, 532, 629 P.2d 226, 228 (holding that a public contractor licensing statute did not make an unlicensed public contractor's contract with a city unenforceable or void, but rather made it unlawful for him to "act in the capacity of a public contractor").

¶24 Furthermore, while Evelyn was prohibited from receiving any money until the gambling license was approved, Henry and Kosmerl could have placed any salaries or rents owed to her in escrow pending compliance with the gambling license application provisions. See e.g. 23.16.118, ARM. Yet, while Henry and Kosmerl continued to pay themselves over $200,000 during this period of time, they made no attempt to reserve Evelyn's portion of the salaries and gaming machine rent in an escrow account or in any other way prior to receiving approval on their gambling license applications, despite having signed the settlement agreements at issue.

¶25 We conclude that the District Court's findings that the settlement agreements were effective November 25, 1992, and that Henry and Kosmerl breached the settlement agreements by paying themselves over $200,000 in salaries and gaming machine rent and failing to pay Evelyn her share is supported by substantial evidence and is not clearly erroneous. Rule 52(a), M.R.Civ.P. Accordingly, we hold that the District Court properly awarded Evelyn her portion of the salaries and gaming machine rent in 1993 and 1994.

8

**¶26  3.  Did the District Court err in concluding that Evelyn was entitled to one-third of the rent paid from real estate she purchased from Defendant Kosmerl?**

¶27  The District Court found that Kosmerl breached the contract for deed that he had entered into with Evelyn concerning the real estate upon which the casinos were located by refusing to proceed with closing and performance of the contract for deed. Based on this finding, the District Court awarded Evelyn her one-third share of the rent generated from the real property since November 25, 1992. Kosmerl argues that the District Court erred in awarding Evelyn these damages.

¶28  Again, as discussed in Issue 2, Kosmerl asserts that the "proposed" real property sale agreement was subject to the approval of the Gambling Control Division pursuant to § 23-5-118, MCA, and that because the gambling license application was not approved until July 1, 1995, Evelyn had no equitable interest in the property prior to approval, and, therefore, was not entitled to any rents generated from the real property prior to July 1, 1995. Furthermore, Kosmerl contends that the District Court erred by severing the contract for deed from the other three settlement agreements to find that Kosmerl had breached the contract for deed.

¶29  This argument, too, is without merit. As we explained previously, the gambling control statutes do not affect the legality of the settlement agreements that the parties signed on November 25, 1992, including the contract for deed. Furthermore, as the District Court found based on hearing testimony, even if the gambling control statutes did affect the legality of the settlement agreements, the Gambling Control Division may consider real estate on

which a casino is located a separate business activity that is not subject to the Division's approval, and, therefore, is severable from the other settlement agreements. We conclude that the District Court's finding that Kosmerl breached the contract for deed by refusing to proceed with closing and performance of the contract for deed is supported by substantial evidence and is not clearly erroneous. Rule 52(a), M.R.Civ.P. Accordingly, we hold that the District Court properly awarded Evelyn her portion of the real estate rent generated since November 25, 1992.

¶30    4.    **Did the District Court err in assessing Defendants Henry and Kosmerl with their share of attorney fees incurred to obtain gambling and liquor license approval?**

¶31    The District Court ordered Henry, Kosmerl and Evelyn to each pay one-third of the attorney fees incurred in obtaining gambling and liquor licenses and to perform other legal work on behalf of the casinos which totaled over $67,000. First, Henry and Kosmerl argue that under the "unclean hands" doctrine that the District Court should not have awarded Evelyn these attorney fees because her ownership interest is illegal. Second, Henry and Kosmerl alternatively argue that even if these fees are recoverable, the District Court still violated their right to due process guaranteed by Article II, Section 17 of the Montana Constitution when it failed to conduct a hearing concerning the reasonableness of these fees before awarding them to Evelyn. We disagree.

¶32    First, as we discussed in Issue 1, the argument that Evelyn is not entitled to these attorney fees because her ownership interest is illegal is without merit. Second, after

10

reviewing the record, we conclude that Henry's and Kosmerl's alternative argument that their due process rights were violated is raised for the first time on appeal. Furthermore, we decline to extend the "substantial rights" exception to the facts before us, and, therefore, we will not address this argument. See Day v. Payne (1996), 280 Mont. 273, 276-77, 929 P.2d 864, 866. On January 30, 1996, the District Court in conjunction with its order of specific performance of the settlement agreements also ordered Henry and Kosmerl to submit an accounting of the revenue and expenses of each casino for the years 1992-1995. Furthermore, the District Court set a hearing date for argument and testimony concerning the propriety of the accounting and concerning the amounts of any obligations to be set off, "including attorney fees and other expenses incurred in obtaining gambling operator licenses on behalf of the casinos." However, Henry and Kosmerl failed to comply with this order, and, consequently, Evelyn subpoenaed the accountant for the casinos to provide the accounting information.

¶33 This information, including the amount of attorney fees and costs incurred regarding the gambling and liquor license applications was submitted to the District Court both in the form of sworn affidavits and testimony given during the June 10, 1996 hearing concerning the accounting. Henry and Kosmerl failed to object to the evidence concerning the amount of these attorney fees and costs; failed to offer evidence to the contrary; and failed to conduct cross examination concerning these fees and costs at the June 10, 1996 hearing. As such, they cannot now raise their objections for the first time on appeal.

11

¶34   5.   **Did the District Court abuse its discretion by awarding Evelyn attorney fees?**

¶35   The District Court also awarded Evelyn $34,116.79 in attorney fees pursuant to § 37-61-421, MCA, which provides:

> An attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct.

In its July 18, 1996 Final Judgment, the District Court, relying upon this statute, stated in Conclusion of Law No. 16 that:

> Here, Henry and Kosmerl have intentionally multiplied this proceeding by failing to fulfill their settlement agreements, applying for gambling licenses and then opposing the applications, and refusing to file the accounting ordered in this case. The only explanation imaginable for Henry and Kosmerl's conduct is that they seek to cause delay and expense. Such conduct is unreasonable and vexatious.

¶36   On appeal, having expressly stipulated that the amount of these attorney fees was reasonable, Henry and Kosmerl do not contest the amount of fees awarded. However, they do argue that the District Court erred in applying § 37-61-421, MCA, to award Evelyn attorney fees because "[a]n award of attorney's fees to enforce an illegal ownership interest is never sustainable as a matter of law." Again, as we discussed in Issue 1, Henry and Kosmerl are barred from raising any claims concerning the legality of Evelyn's ownership interest in the casinos. Therefore, we will not address this issue. Consequently, we hold that the District Court did not abuse its discretion when it awarded Evelyn $34,116.79 in attorney fees pursuant to § 37-61-421, MCA.

12

**¶37    6.    Did the District Court abuse its discretion by denying Defendant Kosmerl's motion to amend the judgment?**

¶38    As discussed previously, Kosmerl never complied with the District Court's January 31, 1996 Order to submit an accounting for each casino for the period 1992-1995. However, after the District Court entered judgment in Evelyn's favor, Kosmerl filed a motion to amend the judgment pursuant to Rule 52(b), M.R.Civ.P., asserting that the District Court should order Evelyn to reimburse Kosmerl for her share of the real estate taxes and insurance costs that he claimed he paid from 1992-1995. On September 18, 1996, the District Court denied Kosmerl's Rule 52(b) motion.

¶39    On appeal, Kosmerl argues that the District Court erred in denying his motion to amend the judgment. This argument is without merit. We have stated before that a Rule 52(b), M.R.Civ.P., motion must be based upon the record as it existed at the time the district court made its findings and conclusions and cannot be based upon new evidence. See Ring v. Hoselton (1982), 197 Mont. 414, 422, 643 P.2d 1165, 1170. Furthermore, it is within the district court's discretion to grant or deny post-trial motions. Montana Rail Link v. Byard (1993), 260 Mont. 331, 337, 860 P.2d 121, 125. Additionally,

> [t]he primary purpose of Rule 52(b) is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment entered thereon. A party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a particular finding of fact or a conclusion of law.

9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2582

13

(1995).

¶40    To support his motion, Kosmerl filed an affidavit regarding the costs of real estate taxes and insurance for 1992-1995 when he filed his Rule 52(b) motion. However, Kosmerl had access to his real estate tax and insurance information all throughout the litigation of this matter and could have submitted the information prior to entry of judgment, but failed to do so. Because, Kosmerl bases his Rule 52(b) motion on new evidence not submitted before entry of judgment, we conclude that the District Court did not abuse its discretion when it denied Kosmerl's motion to amend the judgment.

**¶41    7.    Did the District Court abuse its discretion by denying Defendants Henry's and Kosmerl's Rule 60(b), M.R.Civ.P., motion?**

¶42    On August 16, 1996, Henry and Kosmerl filed a Rule 60(b), M.R.Civ.P., motion for relief from final judgment, asserting that the District Court erred in retroactively applying the settlement agreements by changing their effective date from July 1, 1995, to November 25, 1992, because Evelyn's attorney had represented to a Gambling Control Investigator on June 2, 1993, that the settlement agreements were not retroactive. On September 18, 1996, the District Court denied Henry's and Kosmerl's Rule 60(b) motion.

¶43    Here, like in Issue 2, Henry and Kosmerl again argue that the District Court erred in "retroactively" applying the settlement agreements at issue. As discussed previously, this argument is without merit. In both their brief to the District Court and now on appeal, Henry and Kosmerl rely primarily on Rule 60(b)(6), M.R.Civ.P., arguing that because Evelyn has "unclean hands," she should be equitably barred from having the courts rather than the

14

Gambling Division decide whether the settlement agreements are retroactive. Henry and Kosmerl contend that if Evelyn's attorney had told the District Court about his admission to the Gambling Control Investigator that the settlement agreements were not retroactive, the District Court never would have found that Henry and Kosmerl had breached the settlement agreements prior to July 1, 1995, and never would have awarded Evelyn $123,134.96.

¶44    Just as with Henry's and Kosmerl's previous arguments, they again attempt to ignore the effective dates of the settlement agreements to avoid liability for breach of those agreements. However, their argument concerning the proper forum for determining the "retroactivity" of these agreements is based on the underlying presumption that the statutes and administrative rules governing gambling license applications also govern the legality of the settlement agreements at issue. As we discussed previously in Issue 2, the statutes and administrative rules controlling gambling license applications do not control the legality or effective dates of contracts. Consequently, Henry's and Kosmerl's argument that the Gambling Division, not the courts, should decide the "retroactivity" issue is without merit. Accordingly, we hold that the District Court properly denied Henry's and Kosmerl's Rule 60(b) motion.

**¶45    8.    Should Defendants Henry and Kosmerl pay Kelman's attorney fees on appeal?**

¶46    Pursuant to Rule 32, M.R.App.P., this Court is requested to award Kelman attorney fees on appeal. In Federated Mut. Ins. Co. v. Anderson (1996), 277 Mont. 134, 145, 920 P.2d 97, 104, we awarded the respondent reasonable costs and attorney fees incurred on

15

appeal based on the appellant's inconsistent and conflicting positions, its baseless appellate claims, and its inaccurate citation in its appellate brief. Similarly here, Henry's and Kosmerl's position throughout litigation has been inconsistent with the underlying settlement agreements. Both in the District Court and now on appeal, they have repeatedly presented arguments of illegality concerning both Zollie's and Evelyn's ownership interest in the casinos which they had waived pursuant to the settlement agreements. These actions have resulted in their continued non-performance of the settlement agreements which they signed and executed over five years ago.

¶47 We agree with the District Court that Henry and Kosmerl have multiplied these proceedings unreasonably and vexatiously. Furthermore, we conclude that Henry and Kosmerl brought this appeal without substantial or reasonable grounds. Accordingly, pursuant to Rule 32, M.R.App.P., we hold that Henry and Kosmerl shall pay Kelman's reasonable attorney fees incurred in defending this appeal.

¶48 For the foregoing reasons, the judgment of the District Court is affirmed. Additionally, this case is remanded to the District Court for determination of the amount of attorney fees to which Kelman is entitled pursuant to this Opinion.

¶49 Affirmed and remanded.

_____
Justice

We Concur:

_____

16

William E. Gunther

Jerry Trieweiler

W. William Leaphart
Justices

17

January 22, 1998

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:
ROBERT J. EMMONS
EMMONS & SULLIVAN
608 STRAIN BUILDING
GREAT FALLS MT  59401

JACK L. LEWIS
JARDINE, STEPHENSON, BLEWETT & WEAVER
P O BOX 2269
GREAT FALLS MT  59403-2269

CURTIS G. THOMPSON & STEPHEN T. POTTS
THOMPSON, JACOBSEN & POTTS
P O  BOX 2799
GREAT FALLS MT  59403-2799

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy