No. 96-393

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


DOUGLAS GIEBEL,

      Plaintiff and Appellant,

  v.

MONTANA SYSTEM OF HIGHER EDUCATION; MSU-NORTHERN;
JEFFREY BAKER, MONTANA COMMISSIONER OF HIGHER
EDUCATION; WILLIAM DAEHLING, CHANCELLOR, MSU-NORTHERN;
STEPHEN SYLVESTER CHAIRMAN, DEPARTMENT OF HUMANITIES
AND SOCIAL STUDIES, MSU-NORTHERN; and JANE KATHLEEN
CURRY, ASSISTANT PROFESSOR, MSU-NORTHERN,

      Defendants and Respondents.


APPEAL FROM:  District Court of the Twelfth Judicial District,
               In and for the County of Hill,
               The Honorable John Warner, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Douglas Giebel, pro se,
          Big Sandy, Montana

      For Respondents:

          LeRoy H. Schramm, Legal Counsel,
          Montana University System, Helena, Montana


Submitted on Briefs:  October 24, 1996

Decided:  December 10, 1996

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

On June 13, 1995, Douglas Giebel filed a complaint in the District Court for the Twelfth Judicial District in Hill County, in which he alleged that he was denied fair consideration for employment, was denied an appropriate grievance hearing in violation of his rights to due process and equal protection, and was injured by reliance on a promise of employment, retaliation, blacklisting, malice, defamation, fraud, and a denial of freedom of speech. Both Giebel and the University System defendants filed motions for summary judgment. The District Court granted the defendants' motion. Giebel appeals the District Court's order which denied his motion for summary judgment and which granted the defendants' motion for summary judgment. We affirm the order of the District Court.

We address seven issues on appeal:

1. Did the District Court err when it concluded that Giebel was not deprived of due process by MSU-Northern's employment search and hiring process?

2. Did the District Court err when it concluded that Giebel was not denied equal protection by MSU-Northern's employment search and hiring process?

3. Did the District Court err when it concluded that Giebel could not maintain a cause of action against MSU-Northern for a breach of the covenant of good faith and fair dealing?

4. Did the District Court err when it concluded that Giebel had failed to present a *prima facie* case of fraud?

5. Did the District Court err when it concluded that Giebel had not properly raised a claim of malice?

6. Did the District Court err when it concluded that it had no general right of review of university administrative decisions or their administrative processes relating to these decisions?

7. Did the District Court err when it concluded that Giebel had failed to exhaust his administrative remedies?

FACTUAL BACKGROUND

On June 15, 1993, Montana State University-Northern (MSU-Northern) sent a letter to Douglas Giebel to confirm that he had been hired as an assistant professor in the Theater/Speech Communication Division of the Department of Humanities and Social Services pursuant to a "one-year temporary professional contract for the 1993 school year." The letter made clear that the appointment "extends for its fixed duration and carries no implication of reappointment." The contract which accompanied the letter of appointment indicated the term of Giebel's employment was from August 1, 1993 to May 31, 1994. On April 5, 1994, near the

3

end of Giebel's one-year term of employment, MSU-Northern sent Giebel another letter confirming the school's intent to allow Giebel's contract to expire. The letter stated: "[Y]our temporary appointment . . . will be terminated as of the end of the 1993-94 academic year in accordance with the initial terms of your appointment."

In the spring of 1994, the MSU-Northern campus conducted a job search to secure a permanent faculty member for the position held temporarily by Giebel in the Theater/Speech Communication Department. Giebel applied for the permanent position, and was one of 100 applicants considered for the job.

The search committee for the permanent position was chaired by Dr. Stephen Sylvester, the head of the Department of Humanities and Social Services. Sylvester had become acquainted with Giebel during the 1993-1994 academic year. During that time, Sylvester was generally satisfied with the Giebel's work performance and anticipated that Giebel would have an excellent chance of being hired for the permanent position. Sylvester informed Giebel that his prospects for being hired were good.

Between the time the permanent position was advertised in March 1994, and the time the search committee finalized its recommendation in mid-May, however, Sylvester had changed his position and opposed Giebel's candidacy for the job. Sylvester made his opposition to Giebel known to other search committee members and recommended that Giebel not be granted an interview for the position. In an affidavit filed with the District Court after

4

the selection process was complete, Sylvester cited several factors which led to his opposition of Giebel for the permanent position, including Giebel's trip to New York City with the student member of the search committee and his presentation of a fictitious award to that student during the University's Awards Day convocation; Giebel's deteriorating relationship with a tenure-track member of the Theater/Speech Communication Department; and the fact that Giebel's application for the permanent position was less impressive than those submitted by other candidates.

In mid-May 1994, after learning that he had not been selected for the permanent position, Giebel wrote to the Commissioner of Higher Education and voiced his objection to the University's selection process. In his response, the Commissioner informed Giebel that "[b]efore grievances may be submitted directly to the Commissioner of Higher Education they must be filed with the college chancellor." The Commissioner referred Giebel to the Regent's appeals policy.

On June 10, 1994, Giebel filed a grievance pursuant to the campus grievance procedure. Following a hearing before an eight-person grievance committee on July 14, 1994, MSU-Northern's Chancellor issued a written decision in which he denied Giebel's grievance. Nearly four months later, Giebel appealed the Chancellor's decision to the Commissioner on Higher Education. The Commissioner denied Giebel's appeal on the grounds that it had not been timely filed pursuant to Montana University System Policy 203.5.2, which requires that an appeal be filed "within 30 days of

5

the . . . [campus] decision." Giebel appealed the Commissioner's decision to the Board of Regents; however, on May 19, 1995, the Regents declined to entertain the appeal.

On June 13, 1995, Giebel filed two complaints in the Twelfth Judicial District Court in which he alleged that he was improperly denied fair consideration for employment, was denied an appropriate grievance hearing in violation of his rights to due process and equal protection, and was injured by reliance on a promise of employment, retaliation, blacklisting, malice, defamation, fraud, and a denial of freedom of speech. Both Giebel and the University System defendants filed motions for summary judgment. The District Court concluded that there were no genuine issues of material fact and that the University System defendants were entitled to judgment as a matter of law. The court therefore granted the University System defendant's motion for summary judgment and denied Giebel's cross-motion for summary judgment.

## STANDARD OF REVIEW

In this case, the District Court granted summary judgment to MSU-Northern and dismissed each of Giebel's claims. This Court reviews a district court's grant of summary judgment pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. *State Farm Fire & Cas. Co. v. Powell* (1995), 274 Mont. 92, 95, 906 P.2d 198, 200. Rule 56(c), M.R.Civ.P., provides that summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

6

## ISSUE 1

Did the District Court err when it concluded that Giebel was not deprived of due process by MSU-Northern's employment search and hiring process?

Giebel maintains that MSU-Northern denied him the right to due process as guaranteed by both the Montana and United States Constitutions. Both the Fourteenth Amendment to the United States Constitution, and Article II, Section 17, of the Montana Constitution, prohibit a governmental entity from depriving a person of life, liberty, or property without due process of law. In this case, Giebel contends that the University deprived him of his "liberty right to contract for employment through the search process and his right to protection from invidious discriminatory actions." Giebel cites *Board of Regents v. Roth* (1972), 408 U.S. 564, to support his broad definition of the term "liberty interest."

In *Roth*, the United States Supreme Court addressed the issue of whether the nonrenewal of a nontenured state teacher's contract without a hearing constituted the deprivation of a liberty or property interest. In evaluating the teacher's "property interest," the Court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
>  . . . .
>
>  . . . [T]he respondent's "property" interest in employment at Wisconsin State University-Oshkosh was

7

created and defined by the terms of his appointment. Those terms secured his interest in employment up to June 30, 1969. But the important fact in this case is that they specifically provided that the respondent's employment was to terminate on June 30. They did not provide for contract renewal absent "sufficient cause." Indeed, they made no provision for renewal whatsoever.

Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. <u>In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment</u>.

*Roth*, 408 U.S. at 577-78 (footnote omitted) (emphasis added). The Court also declined to find a liberty interest in the nonrenewal of the teacher's one-year contract. Specifically, the Court stated: "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 575 (citing *Cafeteria Workers v. McElroy* (1961), 367 U.S. 886, 895-96).

Based on the principles of *Roth*, the District Court concluded that Giebel was not deprived of either a liberty interest or a property interest by the expiration of his one-year contract and by the University's decision not to hire him for the permanent tenure-track position. *See also Leland v. Heywood* (1982), 197 Mont. 491, 643 P.2d 578. The court noted that, like the teacher in *Roth*, Giebel was hired pursuant to a one-year contract for employment;

8

that his employment expired pursuant to the terms of his contract; and that that expiration did not provide Giebel with a legitimate claim of entitlement which would rise to the level of a protected interest. The court further noted that Sylvester's alleged assurances of future employment could not form the basis for a claim of entitlement because "college administrators in this state have no authority to contract with faculty members on terms different than those approved by the Board of Regents." *Leland*, 197 Mont. at 497, 643 P.2d at 581. The court therefore held that Giebel was not unconstitutionally deprived of life, liberty, or property without due process of the law.

We hold that the District Court correctly concluded that Giebel had neither a liberty nor a property interest in continued employment with MSU-Northern. We therefore uphold that portion of the court's summary judgment order which concluded that Giebel was not deprived of due process by MSU-Northern's employment search and hiring process.

ISSUE 2

Did the District Court err when it concluded that Giebel was not denied equal protection by MSU-Northern's employment search and hiring process?

Giebel asserts that he was denied equal protection of the law by MSU-Northern's employment search and hiring process. Specifically, Giebel maintains that Sylvester's opposition to his candidacy placed him at a serious disadvantage during the search committee's deliberations. The District Court, however, summarily

9

denied Giebel's equal protection claim on the grounds that Giebel had neither identified a "class" of individuals who had been disadvantaged by the University's search and hiring practices nor asserted the deprivation of a fundamental right from those practices.

This Court has previously evaluated an equal protection claim from a University System faculty member who claimed a denial of equal protection based on the University's failure to grant him tenure. *Akhtar v. Van de Wetering* (1982), 197 Mont. 205, 642 P.2d 149. In *Akhtar*, we stated:

> Appellant claims he was discriminated against in that he was treated differently from other tenure candidates because a different standard of excellence was applied to his tenure evaluation than to others. . . .
>
> We agree with the Fourth Circuit which found that "not every difference in promotion treatment rises to the level of constitutional deprivation either under equal protection or due process." *Clark v. Whiting* (4th Cir. 1979), 607 F.2d 634, 638. In *Clark*, an associate professor claimed he was denied equal protection because different standards were used in evaluating his promotion qualifications than were used in passing on promotions of other faculty members.
>
>          . . . .
>
> President Van de Wetering testified that the tenure evaluations demanded a weighing and balancing of all the areas of consideration for all the candidates. Although there was sharp disagreement among appellant's colleagues, the final determination was that appellant's professional performance did not meet the overall professional academic standards needed to grant tenure.
>
> The District Court concluded the denial of tenure was not arbitrary but was an exercise of academic judgment. It also found no evidence had been presented which indicated the denial resulted from discrimination

10

or that the procedures followed were intended to penalize
a certain class. We agree.

*Akhtar*, 197 Mont. at 218-20, 642 P.2d at 157.

In this case, as in *Akhtar*, no evidence was presented which indicated that the decision not to hire Giebel "resulted from discrimination or that the procedures followed were intended to penalize a certain class." First, as the District Court correctly noted, Giebel has not asserted that he was a member of a particular "class" of individuals which was disadvantaged by the school's hiring process. Second, there is no evidence of any discrimination in the committee's decision to hire another candidate. There was ample evidence presented to the District Court to establish that that chosen candidate was better qualified and had a more impressive resume than Giebel.

Therefore, because we hold that Giebel did not demonstrate that the search committee's procedures were discriminatory or that those procedures were intended to penalize a certain class, we affirm that portion of the District Court's summary judgment order which concluded that "Giebel's complaint is insufficient for a claim of a violation of his equal protection rights."

## ISSUE 3

Did the District Court err when it concluded that Giebel could not maintain a cause of action against MSU-Northern for a breach of the covenant of good faith and fair dealing?

In his amended complaint, Giebel asserted that MSU-Northern's search and hiring process failed to "conform to the covenant of

11

good faith and fair dealing." Specifically, Giebel maintained that the University did not follow its established hiring policies and did not act in good faith during the hiring process. The District Court, however, dismissed Giebel's claim on the ground that a claim of a breach of the covenant of good faith and fair dealing "may arise only from a *termination* of employment." Because the court determined that Giebel was merely a job applicant for a permanent position with the University, the court concluded that Giebel's claim could not form the basis for recovery.

In this case, Giebel was employed by MSU-Northern pursuant to a one-year employment contract and was specifically informed that the term of his employment "extends for its fixed duration and carries no implication of reappointment." In addition, prior to the expiration of his fixed employment contract, Giebel was notified of the University's intention to terminate his appointment "as of the end of the 1993-94 academic year in accordance with the initial terms of [his] appointment." Giebel does not, however, challenge the University's decision to allow his one-year contract to expire; instead, Giebel challenges the University's allegedly unfair treatment of him as a job applicant for a permanent position. Neither this Court nor the Legislature has extended the covenant of good faith and fair dealing to the hiring process. We will not do so on the basis of the facts in this case.

12

Therefore, we affirm the District Court's decision to grant summary judgment and dismiss Giebel's claim for breach of the covenant of good faith and fair dealing.

ISSUE 4

Did the District Court err when it concluded that Giebel had failed to present a *prima facie* case of fraud?

In his original complaint before the District Court, Giebel generally alleged that he had been defrauded by Sylvester's guarantees of employment. More than five months later, after discovery had closed and the University had filed a motion for summary judgment, Giebel filed a document entitled, "Motion to Accept Amended Complaint II." In that document, Giebel alleged with particularity that the search committee had been defrauded by a secret ballot which had been employed during the vote on Giebel's candidacy. Before the District Court could rule on Giebel's motion to amend his complaint, however, Giebel filed a cross-motion for summary judgment. Giebel never renewed or briefed his motion and the District Court neither ruled on the motion nor accepted that document as a part of the record. In an exceptional effort to accommodate Giebel, the District Court analyzed Giebel's claim of fraud as set forth in both his original complaint and in his attempted amendment. The court concluded, however, that (1) Giebel could not allege fraud based on any statements by Sylvester of a promise of future intent and (2) that Giebel did not have standing to allege fraud on behalf of the search committee. The court

13

therefore granted summary judgment to MSU-Northern and dismissed Giebel's claim of fraud.

Rule 9(b), M.R.Civ.P., provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." In his original complaint, Giebel alleges in only the most general of terms that he was defrauded by Sylvester's promises of future employment. That allegation was insufficient to satisfy either Rule 9(b), M.R.Civ.P., or this Court's requirement that a plaintiff must allege the requisite elements of fraud. *See, e.g., Barrett v. Holland & Hart* (1992), 256 Mont. 101, 106, 845 P.2d 714, 717; *Grenz v. Medical Management Northwest* (1991), 250 Mont. 58, 63, 817 P.2d 1151, 1154. Furthermore, as the District Court correctly noted, even if Giebel's claim had been pled with the requisite particularity, "[t]he rule is that fraud cannot be based on and allegation of a promise of future intent." *Braun v. Glade Valley School* (N.C. Ct. App. 1985), 334 S.E.2d 404, 407. *See also Davis v. LDS Church* (1993), 258 Mont. 286, 293, 852 P.2d 640, 644; *Marlin v. Drury* (1951), 124 Mont. 576, 584, 228 P.2d 803, 807.

We hold that the District Court properly dismissed Giebel's original claim of fraud based on the fact that the allegation of fraud was not pled with the requisite particularity, and based on the general rule that promises of future intent cannot form the basis for a claim of fraud. We further hold that the District Court properly dismissed Giebel's amended claim of fraud based on its conclusion that Giebel did not have standing to allege fraud on

14

behalf of the search committee. Such a holding is consistent with the settled law that "if a false statement is made to one person to induce him to act, the balance of the world has no legal right to rely on it." 37 Am. Jur. 2d *Fraud and Deceit* § 244 p. 324 (1968) (citations omitted). We therefore affirm that portion of the District Court's order which granted the University summary judgment and dismissed Giebel's claim of fraud.

## ISSUE 5

Did the District Court err when it concluded that Giebel had not properly raised a claim of malice?

In this case, Giebel has alleged "malice" as a separate cause of action. However, as the District Court noted in its summary judgment order, "malice, by itself does not form the basis for a separate cause of action."

"Malice is basically no more than a state of mind." 52 Am. Jur. 2d *Malice* § 1, p. 161 (1970) (citation omitted). As such, it cannot alone form the basis for a cause of action. The existence of malice may either serve to prove a necessary element of a particular offense or cause of action, or may serve as a factor to enhance damages. *See, e.g., First Bank v. Clark* (1989), 236 Mont. 195, 204, 771 P.2d 84, 90 (requiring existence of malice as element of malicious prosecution); Section 27-1-221, MCA (providing that punitive damages may be available when actual malice is proven). It is, in fact, well established that "[a] legally permissible act does not give rise to an actionable injury simply because it is

15

performed with evil intent or an improper motive." 1 Am. Jur. 2d *Actions* § 54, p. 758 (1994).

In Montana, "malice" is defined as a "wish to vex, annoy, or injure another person or an intent to do a wrongful act, established either by proof or presumption of law." Section 1-1-204(3), MCA. However, whether Sylvester "intended to injure Giebel," as Giebel alleges, is irrelevant unless that state of mind led to conduct which gives rise to a judicially cognizable claim. As the District Court correctly concluded: "Mr. Sylvester's actions in not supporting Mr. Giebel as a candidate for the open tenure faculty position, and his alleged actions of discouraging other members of the search committee from pursuing him as a candidate, do not constitute an illegal, impermissible act against Mr. Giebel."

We therefore hold that the District Court's conclusion that Giebel's allegation of malice did not state a claim for which he was entitled to recover, is correct. We affirm that portion of the District Court's summary judgment which dismissed this claim.

## ISSUE 6

Did the District Court err when it concluded that it had no general right of review of university administrative decisions or their administrative processes relating to these decisions?

When Giebel was not hired for the permanent position at MSU-Northern, he filed an internal grievance pursuant to the University System grievance procedure. Giebel's grievance was denied by the MSU-Northern Chancellor on July 25, 1994. Giebel's

16

appeal of his grievance was denied by the Commissioner of Higher Education on March 3, 1995, on the ground that it was untimely. After the Board of Regents declined to entertain Giebel's appeal of the Commissioner's decision, Giebel attempted to invoke the jurisdiction of the District Court to review the University's policies and its grievance and appeals process. In its order granting the University's motion for summary judgment, however, the court concluded that there exists no general statutory right of review of a University System's administrative actions.

Ordinarily, administrative decisions are subject to judicial review pursuant to the Montana Administrative Procedure Act (MAPA). *See* §§ 2-4-101 through -711, MCA. Pursuant to § 2-4-102(2)(a)(iii), MCA, however, both the Board of Regents and the Montana University System are exempt from MAPA's provisions. Therefore, no independent right of judicial review of University administrative decisions exists pursuant to MAPA, nor has that right been created by some other means. "In Montana, only the legislature may validly provide for judicial review of agency decisions." *Nye v. Department of Livestock* (1982), 196 Mont. 222, 226, 639 P.2d 598, 498, 500. As evidenced by MAPA, however, the Legislature has chosen not to provide for a general review of University System decisions.

As made clear by the District Court, although no specific right of judicial review is provided by MAPA, a plaintiff may still challenge a University System administrative decision by alleging a judicially-cognizable cause of action. In this case, the court

17

merely refused to review the general decision reached by the University System; the court did, however, address Giebel's specific allegations against the University when it reviewed Giebel's claims of denial of due process, denial of equal protection, denial of freedom of speech, breach of the covenant of good faith and fair dealing, fraud, defamation, intentional infliction of emotional distress, and blacklisting.

We hold that the District Court correctly concluded that it had no general right of review of University administrative decisions or their administrative processes relating to those decisions. We therefore affirm that part of the District Court's summary judgment order in which the court declined to review the general administrative decision process of the Montana University System.

ISSUE 7

Did the District Court err when it concluded that Giebel had failed to exhaust his administrative remedies?

In this case, the District Court held that Giebel had "failed to follow both common law and state statutory mandates which require that he exhaust all administrative remedies before bringing a claim in district court." Specifically, the court concluded that Giebel had failed to abide by both the Board of Regent's appeals policy and the common law doctrine of exhaustion of remedies. The court therefore concluded that several of Giebel's claims which were informally alleged in Giebel's numerous and lengthy filings were barred by the doctrine of exhaustion.

18

It is the general policy of this state, as set forth in both statute and case law, to require a complainant to exhaust his administrative remedies before he may access the judicial system. The Administrative Procedure Act, in fact, allows judicial review only to "[a] person who has exhausted all administrative remedies available within the agency." Section 2-4-702, MCA. Because the University System is exempted from the Administrative Procedure Act, Giebel's claim is subject to only the common law doctrine of exhaustion, which this Court has recognized as "the general principle that ordinarily administrative remedies must be exhausted before applying for judicial review." *State ex rel. Sletten Constr. Co. v. Great Falls* (1973), 163 Mont. 307, 311, 516 P.2d 1149, 1151.

In this case, Giebel failed to avail himself of the appropriate administrative remedy in a timely fashion. Specifically, Giebel failed to comply with Section 203.5.2 of the Montana University System Policy, which requires that an appeal of a campus grievance decision must be filed within thirty days of that decision. Instead, although the Chancellor's decision was rendered on July 25, 1994, Giebel did not file his appeal of that decision until November 22, 1994. Although Giebel corresponded with the Commissioner of Higher Education several times during the intervening months, the Commissioner responded with only general statements of policy and continuously advised Giebel that his appeal would have to conform with Section 203.5.2 of the University

System Policy. The Commissioner denied Giebel's appeal on March 3, 1995, on the ground that the appeal was not timely filed.

It is well established that failure to make a timely appeal of an administrative decision may result in a failure to exhaust administrative remedies. As one treatise has noted:

> If the petitioner once had an opportunity to pursue a then-available administrative remedy within a specified time period, but the petitioner did not pursue the remedy within the time it was available, the agency action may be final by the time the court decides whether to review the action. Yet, in that situation, the court still may decline to review the final agency action because of the petitioner's failure to have exhausted the administrative remedies that were previously available.

Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise, vol. II, § 15.1 at 306 (1994) (citation omitted) (emphasis added). The Montana University System Policy also reflects this proposition. It states: "When a party fails to exercise the appeal rights guaranteed by this policy the party accepts the lower level decision as final and waives the right to contest the matter further." Montana University System Policy, Section 203.5.2.

In this case, the District Court correctly concluded that Giebel did not exhaust his administrative remedies because he did not file a timely appeal of the Chancellor's decision. On that basis, the court correctly concluded that Giebel had waived his right to contest several claims which were resolved by the University Chancellor and the campus grievance committee. We therefore affirm that portion of the District Court's decision

20

which concluded that several of Giebel's claims were barred by the doctrine of exhaustion and could not be addressed by the court.

Based on our conclusions that there are no genuine issues of material fact presented in this case, and that the University System defendants are entitled to judgment as a matter of law, we affirm the District Court's order which granted the defendants' motion for summary judgment and denied Giebel's cross-motion for summary judgment.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

21